# EXHIBIT A

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| | | COUNTY  Middlesex |

| Plaintiff | Robert A. Doane | Defendant | Benefytt Technologies, et al. |
|---|---|---|---|
| ADDRESS: | 103 Prospect Street, Wakefield, MA 01880 | ADDRESS: | 3450 Buschwood Park Drive, Tampa, FL 33618 |
| | | | |
| | | | |
| Plaintiff Attorney: | | Defendant Attorney: | |
| ADDRESS: | | ADDRESS: | |
| | | | |
| | | | |
| BBO: | | BBO: | |

### TYPE OF ACTION AND TRACK DESIGNATION (see instructions section below)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B99 | Other Tortious Action | F | ☐ YES   ☒ NO |

*If "Other" please describe: _____

| Is there a claim under G.L. c. 93A? | Is there a class action under Mass. R. Civ. P. 23? |
|---|---|
| ☒ YES   ☐ NO | ☐ YES   ☒ NO |

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS

A. Documented medical expenses to date
   1. Total hospital expenses   _____
   2. Total doctor expenses   **RECEIVED**  1/14/2022   HG   _____
   3. Total chiropractic expenses   _____
   4. Total physical therapy expenses   _____
   5. Total other expenses (describe below)   _____

   _____

   Subtotal (1-5):   **$0.00**

B. Documented lost wages and compensation to date   _____
C. Documented property damages to date   _____
D. Reasonably anticipated future medical and hospital expenses   _____
E. Reasonably anticipated lost wages   _____
F. Other documented items of damages (describe below)   $720,000.00

Actual to be determined, and Statutory Damages under the Fed. Tel Cons. Prot. Act and the Mass. Tel. Sol. Act

   TOTAL (A-F):   **$720,000.00**

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

Invasion of Privacy and Intrusion Upon Seclusion, battery usage and electricity expense

### CONTRACT CLAIMS

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

January 14, 2022

| Signature of Attorney/Unrepresented Plaintiff: X   /s/ Robert A. Doane | Date: XXXXXX XXXXXX |
|---|---|

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

| Signature of Attorney/Unrepresented Plaintiff: X   /s/ Robert A. Doane, pro se certifying review of SJC Rule 1:18 | Date: XXXXXX XXXXXX |
|---|---|

January 14, 2022

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

### AC Actions Involving the State/Municipality *

AA1 Contract Action involving Commonwealth,
    Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth,
    Municipality, MBTA, etc. (A)
AC1 Real Property Action involving
    Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth,
    Municipality, MBTA, etc. (A)
AE1 Administrative Action involving
    Commonwealth, Municipality, MBTA,etc. (A)

### CN Contract/Business Cases

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1 (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal
    Affairs of Entities (A)
BA3 Liability of Shareholders, Directors,
    Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of
    Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade
    Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade
    Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

\* Choose this case type if ANY party is the
Commonwealth, a municipality, the MBTA, or any
other governmental entity UNLESS your case is a
case type listed under Administrative Civil Actions
(AA).

† Choose this case type if ANY party is an
incarcerated party, UNLESS your case is a case
type listed under Administrative Civil Actions (AA)
or is a Prisoner Habeas Corpus case (E97).

### ER Equitable Remedies

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c. 231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

### PA Civil Actions Involving Incarcerated Party †

PA1 Contract Action involving an
    Incarcerated Party (A)
PB1 Tortious Action involving an
    Incarcerated Party (A)
PC1 Real Property Action involving an
    Incarcerated Party (F)
PD1 Equity Action involving an
    Incarcerated Party (F)
PE1 Administrative Action involving an
    Incarcerated Party (F)

### TR Torts

B03 Motor Vehicle Negligence - Personal
    Injury/Property Damage (F)
B04 Other Negligence - Personal
    Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical (A)
B07 Malpractice - Other (A)
B08 Wrongful Death - Non-medical (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

### RP Summary Process (Real Property)

S01 Summary Process - Residential (X)
S02 Summary Process - Commercial/
    Non-residential (F)

### RP Real Property

C01 Land Taking (F)
C02 Zoning Appeal, G.L. c. 40A (F)
C03 Dispute Concerning Title (F)
C04 Foreclosure of a Mortgage (X)
C05 Condominium Lien & Charges (X)
C99 Other Real Property Action (F)

### MC Miscellaneous Civil Actions

E18 Foreign Discovery Proceeding (X)
E97 Prisoner Habeas Corpus (X)
E22 Lottery Assignment, G.L. c. 10, § 28 (X)

### AB Abuse/Harassment Prevention

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E(X)

### AA Administrative Civil Actions

E02 Appeal from Administrative Agency,
    G.L. c. 30A (X)
E03 Certiorari Action, G.L. c. 249, § 4 (X)
E05 Confirmation of Arbitration Awards (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9 (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8 (X)
E08 Appointment of a Receiver (X)
E09 Construction Surety Bond, G.L. c. 149,
    §§ 29, 29A (A)
E10 Summary Process Appeal (X)
E11 Worker's Compensation (X)
E16 Auto Surcharge Appeal (X)
E17 Civil Rights Act, G.L. c.12, § 11H (A)
E24 Appeal from District Court
    Commitment, G.L. c.123, § 9(b) (X)
E25 Pleural Registry (Asbestos cases)
E94 Forfeiture, G.L. c. 265, § 56 (X)
E95 Forfeiture, G.L. c. 94C, § 47 (F)
E99 Other Administrative Action (X)
Z01 Medical Malpractice - Tribunal only,
    G.L. c. 231, § 60B (F)
Z02 Appeal Bond Denial (X)

### SO Sex Offender Review

E12 SDP Commitment, G.L. c. 123A, § 12 (X)
E14 SDP Petition, G.L. c. 123A, § 9(b) (X)

### RC Restricted Civil Actions

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S(X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | ___F___ | ☒ YES ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                                     SUPERIOR COURT

| | |
|---|---|
| ROBERT A. DOANE, ) | |
| ) | |
| Plaintiff, ) | Docket #: _____ |
| v. ) | |
| ) | |
| BENEFYTT TECHNOLOGIES, INC., ) | |
| formerly HEALTH INSURANCE ) | **COMPLAINT** |
| INNOVATIONS, INC., ) | |
| ) | |
| GAVIN SOUTHWELL, ) | |
| as officer and director of Health Insurance ) | **RECEIVED** |
| Innovations Inc., and in his personal and ) | |
| individual capacity, ) | 1/14/2022    HG |
| ) | |
| MICHAEL DEVRIES ) | |
| as officer and director of Health Insurance ) | |
| Innovations Inc., and in his personal and ) | |
| individual capacity, ) | |
| ) | |
| and ) | |
| ) | |
| JOHN and/or JANE DOE(s); and/or ) | |
| ) | |
| XYZ Company, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## **INTRODUCTION**

1.      This case involves a scheme by Defendants to market alleged health insurance products to consumers, including Plaintiff, in Massachusetts, in violation of the provisions of the Telephone Consumer Protection Act 47 U.S.C. §227, et seq. ("TCPA"), the Massachusetts Telephone Solicitations Act, G.L. c 159C, et seq. ("MTSA"), the Massachusetts Consumer Protection Act, G.L. c. 93A, et seq. ("MCPA"), and for invasion of privacy and intrusion upon seclusion, in violation of the Massachusetts Right to Privacy Act, G.L. c. 214, § B1 ("MRPA").

2.      The Defendants delegated their marketing duties to and directed and conducted marketing through their unregistered telemarketers, using illegal technologies, and ratified the conduct of these telemarketers by accepting referrals and generated sales from their telemarketers' harassing and illegal conduct. As part of the Defendants' illegal scheme, the Defendants would contact and/or cause to be contacted on their behalf, Massachusetts consumers, including Plaintiff, on their cellular telephones using caller ID "Spoofing," prerecorded voices, and automatic telephone dialing systems ("ATDS") without their prior express consent and while they are listed on the federal and Massachusetts do-not-call registries.

3.      Plaintiff seeks statutory damages under the TCPA and MTSA, actual damages under the MRPA, and other actual damages, subject to the MCPA, under which Plaintiff seeks punitive damages as to each defendant without the right of contribution, disgorgement of Defendants ill-gained profits, and to enjoin the Defendants from continuing their illegal activities.

## <u>THE PARTIES</u>

4.      Plaintiff, Robert A. Doane ("Doane" or "Plaintiff"), is an individual residing at 21 New Lane, West Tisbury, Massachusetts 01880, with an off-season mailing address of 103 Prospect Street, Wakefield Massachusetts, 01880, where he may presently be served.

5.      Defendant, Benefytt Technologies, Inc., formerly Health Insurance Innovations, Inc. ("Benefytt Technologies"), is a company organized under the laws of Delaware, with a principal office located at 3450 Bushwood Park Drive, Tampa, FL 33618, Benefytt Technologies' registered is Corporation Service Company, 1201 Hays Street, Tallahassee, Fl 32301.

6.      Defendant, Gavin Southwell ("Southwell"), is an individual residing in Florida. At all times relevant, Southwell was the "President, Director, and CEO," of Benefytt Technologies and with the other individual named herein, exclusively directed, and controlled Benefytt Technologies , and personally participated in and authorized the actionable conduct alleged herein,

7.      Defendant, Michael DeVries ("DeVries"), is an individual residing in Florida. At all times relevant, Devries was the "CFO," of Benefytt Technologies and, with the other individual named herein, exclusively directed, and controlled Benefytt Technologies , and personally participated in and authorized the actionable conduct alleged herein.

8.     Plaintiff does not yet know the identity of Defendants' other that had direct, personal participation in or personally authorized the conduct found to have violated the TCPA and other statutes as alleged herein and were not merely tangentially involved.  Plaintiff, upon discovering same, shall amend this complaint accordingly, as numerous District Courts have found that individual officers/principals of corporate entities may be personally liable (jointly and severally) under the TCPA if they had direct, personal participation in or personally authorized the conduct found to have violated the statute, and were not merely tangentially involved. *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899 (W.D. Tex. 2001); *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, 2014 WL 1333472, at * 3 (N.D. Ohio March 28, 2014); *Maryland v. Universal Elections*, 787 F.Supp.2d 408, 415-16 (D.Md. 2011); *Baltimore-Washington Tel Co. v. Hot Leads Co.*, 584 F.Supp.2d 736, 745 (D.Md. 2008); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, 2003 WL 21384825, at *6 (D.C.Super Apr. 17, 2003); *Chapman v. Wagener Equities, Inc.* 2014 WL 540250, at *16-17 (N.D.Ill. Feb. 11, 2014); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F.Supp.2d 1316, 1321 (D.Wy.2011)

9.     Whenever in this complaint it is alleged that the Defendants committed any act or omission, it is meant that these Defendants officers, directors, vice-principals, agents, servants, or employees, subsidiaries, or affiliates committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of the Defendants, or was done in the routine normal course and scope of employment of Defendants officers, directors, vice-principals, agents, servants, or employees.

10.     Defendant, John Doe(s) and Jane Doe(s) ("Jane Doe(s) and/or John Doe(s)") are unknown individuals residing at an unknown address. Upon discovering their true identities this complaint will be amended to reflect the same.

11.     Defendant, XYZ Company(ies), is an unknown company(ies). Upon discovering their true identity(ies) this complaint will be amended to reflect the same.

## JURISDICTION AND VENUE

12.     The allegations of paragraphs 1 through 11 of this Complaint are realleged and incorporated by reference.

13.    Plaintiff is a resident of both Wakefield, Middlesex County, Massachusetts, and West Tisbury, County of Dukes County, Massachusetts.

14.    Venue is proper in this Court according to G.L. c. 223, § 1 because Plaintiff resides in Middlesex County and a substantial part of the events or omissions on which the claims are based occurred in Middlesex County.

15.    This Court has subject matter jurisdiction according to G.L. c. 212, § 3 because the amount in controversy exceeds Fifty Thousand Dollars ($50,000).

16.    This Court also has separate personal jurisdiction over the Defendants for those claims arising under the Massachusetts Telemarketing Solicitation Act, G.L. c. 159C et seq., because "[a] court of the Commonwealth may exercise personal jurisdiction over a nonresident or his executor or administrator as to an action or proceeding authorized by [G.L. c. 159C § 12]."

17.    This Court has <u>general</u> personal jurisdiction over out-of-state defendants because at all times relevant the defendants had continuous and systematic general business contacts with Massachusetts directly and through their agents, and <u>specific</u> personal jurisdiction over out-of-state defendants under the Massachusetts Long-Arm Statute, G.L c. 223A, because the defendants directly and through their agents: (a) transacted business in Massachusetts; and/or (b) contracted to supply services and things in Massachusetts; and/or (c) caused tortious injury by acts and omissions in Massachusetts; and/or (d) caused tortuous injury in Massachusetts by acts and omissions outside Massachusetts in the course of regularly doing and soliciting business, and engaging in other persistent courses of conduct while deriving substantial revenue from those goods used and consumed and services rendered in Massachusetts.

## <u>LEGAL BASIS FOR THE FEDERAL TELEMARKETING CLAIMS</u>

18.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing…can be an intrusive invasion of privacy…" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

19.     Specifically, the TCPA restricts telephone solicitations (i.e., telemarketing) and the use of automated telephone equipment. The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines. It also specifies several technical requirements for fax machines, autodialers, and voice messaging systems—principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

20.     In its initial implementation of the TCPA rules, the FCC included an exemption to its consent requirement for prerecorded telemarketing calls. Where the caller could demonstrate an "established business relationship" with a customer, the TCPA permitted the caller to place pre-recorded telemarketing calls to residential lines. The new amendments to the TCPA, effective October 16, 2013, eliminated the established business relationship exemption. Therefore, all pre-recorded telemarketing calls to residential lines and wireless numbers violate the TCPA if the calling party does not first obtain express written consent from the called party.

21.     As of October 16, 2013, unless the recipient has given prior express written consent,[1] the TCPA and Federal Communications Commission ("FCC") regulations promulgated pursuant to the TCPA mandate the following:

(i)      Prohibits solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

(ii)     Requires solicitors to provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

(iii)    Prohibits solicitations to residences that use an artificial voice or a recording.

(iv)     Prohibits any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or telephone.

(v)      Prohibits any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (e.g., "911"), a hospital emergency number, a physician's office, a hospital/health care

---

[1] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarking messages to be delivered." 47 C.F.R. § 64.1200(f)(8)

facility/elderly room, a telephone, or any service for which the recipient is charged for the call.

(vi)      Prohibits autodialed calls that engage two or more lines of a multi-line business.

(vii)     Prohibits unsolicited advertising faxes.

(viii)    Prohibits certain calls to members of the Do-Not-Call Registry.

22.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." In re Rules and Regulations Implementing the TCPA, Declaratory Ruling on Motion by ACA International for Reconsideration, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (Dec. 31, 2012).

23.    Accordingly, an entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

24.    There are just a handful of elements that need to be proven for violations of the Do Not Call provision of the TCPA.

25.    <u>More Than One Call within Any 12-Month Period</u>. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

26.    <u>Calls to Phones on the Do Not Call List</u>. The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." See 47 C.F.R. § 64.1200(c).

27.    <u>Including Wireless Lines on the Do Not Call List</u>. Owners of wireless telephone numbers (aka mobile or cellular phones) receive the same protections from the Do Not Call provision as owners or

subscribers of wireline ("landline") phone numbers. 47 C.F.R. § 64.1200(e), provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

28.    The Affirmative Defense of Prior Express Consent. The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009) ("Satterfield")). "Prior express consent is an affirmative defense for which the defendant bears the burden of proof." See *Grant v. Capital Management Services, L.P.*, 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"); see also *Robbins v. Coca-Cola Company*, No. 13-cv-132, 2013 WL 2252646, at *2 (S.D. Cal. May 22, 2013).

29.    Telemarketers Must Maintain a List of Persons Requesting Not to Receive Calls. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a

request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request…

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made) and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

## LEGAL BASIS FOR THE MASSACHUSETTS TELEMARKETING CLAIMS

30.     In 2002, Massachusetts enacted the Telemarketing Solicitation Act, G. L. c. 159C, inserted by St. 2002, c. 265, § 1 ("MTSA").

31.     As the Supreme Judicial Court noted, "We presume that the Massachusetts Legislature was aware of the TCPA when it enacted G. L. c. 159C, which itself regulates telemarketing solicitation… General Laws c. 159C, § 13, provides that the 'remedies, duties, prohibitions and penalties provided in this chapter shall not be exclusive and shall be in addition to all other causes of action, remedies and penalties provided by law.' '[O]ther causes of action, remedies, and penalties' would surely encompass violations of Federal law."

32.     Telephone numbers registered with the FTC are automatically included in the Massachusetts do-not-call registry subject to the MTSA, G.L. c. 159C §7.

33.     The MTSA states that "A telephone solicitor shall not make or cause to be made an unsolicited telephonic sales call to a consumer: (i) if the consumer's name and telephone number appear on the then-current quarterly no sales solicitation calls listing made available by the office under section 2; (ii) to be received between the hours of 8:00 p.m. and 8:00 a.m., local time, at the consumer's location; (iii) in the form of electronically transmitted facsimiles; or (iv) by use of a recorded message device." G.L. c. 159C § 3.

34.     The MTSA also prohibits spoofing, which displaces an actual caller ID with a false one. Specifically, the MTSA states in relevant part, "[n]o telephone solicitor shall intentionally cause to be installed or shall intentionally use a blocking device or service to circumvent a consumer's use of a caller identification service or device. G.L. c. 159C § 4.

35.     The MTSA further states in relevant part, "A person who has received more than 1 unsolicited telephonic sales call within a 12–month period by or on behalf of the same person or entity in violation of this chapter may: (i) bring an action to enjoin the violation; (2) bring an action to recover for actual monetary loss from such knowing violation or to receive not more than $5,000 in damages for such knowing violation, whichever is greater; or (iii) bring both such actions." G.L. c. 159C § 8(b).

36.     The regulations promulgated under the MTSA, 201 CMR 12, require telemarketers to Massachusetts residents to register with the Office of Consumer Affairs and Business Regulation before making telephone solicitations to Massachusetts residents, and without so registering, such solicitations violate the MTSA. In fact, without so registering, it is not even possible to obtain the Massachusetts do-not-call registry, to ensure solicitations are not made to those on it.

37.     The regulations promulgated under the MTSA state in relevant part that "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers must institute procedures for honoring the list of Massachusetts consumers who have elected not to receive unsolicited telephonic sales calls in compliance with G.L. c. 159C and 201 CMR 12.00 et seq." 201 CMR 12.02 (6).

38.     The regulations promulgated under the MTSA also state in relevant part, "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers shall, at the beginning of such call, disclose [(b) the correct name of the telemarketing company that employs the individual telemarketer who is making the call; [and] (c) the correct name of the ultimate seller whose goods or services are being offered by means of the telemarketing call] … within the first minute of a telephonic sales call …" 201 CMR 12.02 (7).

### CONSENT MUST COMPLY WITH THE E-SIGN ACT AND THE UETA

39.     The FCC recognized, pursuant to the E-SIGN Act, consent obtained via an "email, Web site form, text message, telephone keypress, or voice recording" is sufficient so long as the other requirements (e.g. mandatory disclosures, identification of the phone number, **clear authorization by the person providing consent**, etc.) are met. 77 Fed. Reg. 34233 (June 11, 2012).

40.     The Uniform Electronic Transactions Act ("UETA"),[2] enacted by forty-seven states, including Massachusetts (G.L. c. 110G) validated the use of an "electronic signature," which is defined as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." UETA § 2(8).[3]

41.     The UETA, and G.L. c. 110 provides that:

(a) An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

(b) The effect of an electronic record or electronic signature attributed to a person under subsection (a) is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

UETA § 9; G.L. c. 110G § 9 (emphasis added).

---

[2] Available at http://www.uniformlaws.org/shared/docs/electronictransactions/ueta_final_99.pdf
[3] Those states that have not adopted the UETA (such as Illinois and New York) have implemented similar statutes validating e-signatures.

42.     As defined, a "Security procedure" means a procedure employed for the purpose of verifying that an electronic signature, record, or performance is that <u>of a specific person</u> or for detecting changes or errors in the information in an electronic record. The term includes a procedure that requires the use of algorithms or other codes, identifying words or numbers, encryption, or callback, or other acknowledgment procedures. UETA § 2(14); G.L. c. 110G § 2.

## **FACTUAL ALLEGATIONS**

43.     The allegations of paragraphs 1 through 42 of this Complaint are realleged and incorporated by reference.

44.     Plaintiff is an individual who suffers from a sleep disorder and often sleeps during the day.

45.     Plaintiff is the trustee of several trusts, and at the relevant time was the primary caretaker and power of attorney for his elderly parents and stepmother suffering from dementia.

46.     At all times relevant, Plaintiff's cell phone number, 781-504-2552, used for residential purposes, was registered to a "do not call list" maintained by the Federal Trade Commission ("FTC"). A true copy of a printout confirming the FTC do not call registration is attached herewith as **"Exhibit 1"** and incorporated herein by reference.

47.     Telephone numbers that are registered with the FTC are automatically included in the Massachusetts do-not-call list subject to the Massachusetts Telemarketing Solicitation Act, G.L. c. 159C §7 ("MTSA").

48.     At all times relevant, the Defendants were involved in the business of promoting, marketing, and selling insurance related products and services through the use of the telephone.

49.     Leading up to August 3, 2018, the Defendants, through their agents, without Plaintiff's prior expressed consent, caused not less than thirty (30) telephone calls to Plaintiff's cellphone, listed on the Federal Trade Commission's do-not-call registry and the Massachusetts do-not-call registry, using "spoofing," and "automatic telephone dialing systems" ("ATDS"), and prerecorded messages, attempting to solicit sales of insurance-related products and services, after which Defendants caused not less than three (3) direct calls without legal consent.

50.    The Defendants' offending calls, using a variety of spoofed numbers, caused Plaintiff's cellphone to ring, and in instances they were answered, a prerecorded message played attempting to solicit the sales of health insurance products.

51.    Plaintiff, in order to identify those responsible and get the calls to stop, believed the only way to identify the offenders was to feign interest in hopes the offenders would reveal who they were and who they were representing.

52.    Plaintiff, after numerous of these calls, some repeatedly using the same spoofed number (e.g., calls from "781-680-1720" alone occurred on May 31, 2018, at 1:59 PM, June 1, 2018, at 12:13 PM, June 4, 2018, at 9:38 AM, 1:42 PM, and 4:30 PM, and June 5, 2018, at 9:23 AM, and 10:01 AM), made attempts to identify those responsible, and on each attempt, the agent would identify themselves as "National Health Enrollment Center."

53.    After several unsuccessful attempts to identity the offenders, on June 5, 2018, after Plaintiff received the same prerecorded message attempting to solicit sales of health insurance, an agent got on the line claiming to be "Alex," again with the "National Health Enrollment Center."

54.    The agent claimed to be calling in response to a request for health insurance, when at no time did Plaintiff make such a request.

55.    The agent asked for Plaintiff's first and last name, his age, and his state. Plaintiff advised the agent was that his residences were in Massachusetts and Florida.

56.    The agent claimed to be calling out of Fort Lauderdale Florida.

57.    The agent asked several questions, and stated, "Okay, I am going to transfer you to a licensed agent, actually, since you are in Florida, she is right next to me, so I am going to grab her."

58.    The next agent was female, claiming to be a "licensed agent." The agent asked several questions, and that she would get Plaintiff a "full guarantee issue policy," and the agent described the policy.

59.     Plaintiff asked the agent what company the policy was with, and the agent stated, "Health Choice Plus," and "VitalaCare," underwritten by Federal Insurance Company, which the agent claimed was Chubb."

60.     The agent stated she would do an application. The agent asked Plaintiff several questions and stated that there was a 30-day look period and if not satisfied during that period there would be a full refund.

61.     The agent asked Plaintiff for his email and address. After Plaintiff provided his Massachusetts address, the agent claimed she required a Florida address. Plaintiff told the agent that communications must be sent to his Massachusetts address only, and one of his Massachusetts addresses was provided.

62.     The agent stated there would be a one-time enrollment fee of $125, and the policy payments would be $411.17, and the agent then asked for Plaintiff's credit card information and stated that information was required over the phone.

63.     Plaintiff asked the agent to confirm that there was a 30-day look period and that a complete refund would be available if not satisfied during that period, and the agent stated "absolutely." The agent also indicated that no transaction would occur yet, until after a signature.

64.     Plaintiff provided his credit card information to the agent.

65.      The agent then provided Plaintiff with what she claimed to be her direct phone number (954-892-7575). The agent then stated she sent a link to Plaintiff's email, and that it needed to be signed, after which paperwork would come to Plaintiff's email and mail in Massachusetts.

66.     The agent asked Plaintiff to open the link on the email, expecting Plaintiff to sign while she was on the phone. The Plaintiff told the agent that his email could not be accessed while on the phone, and that Plaintiff would call her back, and if she could be called back on the number from which the call was received.

67.    The agent advised Plaintiff to call the number she provided (954-892-7575), and that this was her direct cellphone, and she could be called or texted. [4] The call was then terminated.

68.    Plaintiff reviewed the email subsequently received from the agent and discovered the header of the email read "Health Insurance Innovations."

69.    The email was from echosign@echosign.com. The reply to address was "webmaster@hiiquote.com." A true copy of the email is attached herewith as **"Exhibit 2"** and incorporated herein by reference.

70.    A link in the email stated, "Click here to review and sign Application Form of VitalaCare."

71.    Upon Plaintiff clicking the link, the application revealed an address of "Health Insurance Innovations, 218 E. Bearss Ave, Ste 325, Tampa, Florida." A true copy of the email is attached herewith as **"Exhibit 3"** and incorporated herein by reference.

72.    Plaintiff did not sign the application.

73.    Plaintiff later that day received two calls (without consent) from 954-892-7575 at around 4:00 PM, which Plaintiff did not answer.

74.    Plaintiff received a call from 781-041-4061, from a local prefix, which he answered.

75.    The agent on the call indicated an email was sent for Plaintiff to sign, and that she was calling from the office of "Trishia Perez," and that she was calling to find out the problem, whether the email opened, and whether it was signed.

76.    Plaintiff asked the agent if she could be reached from the number she dialed.

---

[4] An Internet search revealed the number was owned by Ruslan Atanasov Shopov, 3316 Nw 101st Ave, Sunrise FL 33351-6939. White pages revealed "Trisha Perez" was related, and at the same address under family and previous owners. A search of Trishia Perez on Florida's corporation's registry revealed a company known as "Perez Health Advisors" of 3225 N Hitatus Rd, Sunrise FL 33345. Ruslan Shopov is associated with the company known as PBSJ Inc., formed about the same time, with address of 3316 NW 101st Ave, Sunrise, FL 33351, and Tricia is an officer of PBSJ Inc., however, that Company is listed as doing truck and trailer repair.

77.     The agent responded providing Plaintiff with what she said was "Trishia's office number," which she indicated was 954-892-7575, after which the call was terminated.

78.     On June 6, 2018, Plaintiff received an email from support@hiiquote.com, cc'd to perezhealthadvisors@outlook.com stating in relevant part, "You must complete your eSignature Application Form before payment is taken and your policy(s) go into effect." A true copy of the email is attached herewith as **"Exhibit 4"** and incorporated herein by reference.

79.     Plaintiff continued thereafter to receive the same prerecorded calls using several different spoofed numbers.

80.     After several of these calls, Plaintiff feigned interest again to determine whether all the calls with the same prerecorded message were likely being made on behalf of Health Insurance Innovations.

81.     On June 19, 2018, upon Plaintiff receiving a call from a spoofed number appearing as 781-601-9501, again with the prerecorded message offering health insurance, a live agent got on the line this time alleging to be "Nick," and asking the same several questions, with facts substantially similar to the fact pattern described during the June 5th call. Plaintiff answered the agent's questions. The agent indicated he would transfer the call to his "licensed agent."

82.     After the transfer, another agent got on the line, and without identifying himself, stated, "Thank you for being transferred over to National Health Enrollment." The agent claimed to be recording the call, which oddly, is the first time an agent claiming to be with from National Health Enrollment ever suggested the call was going to be recorded.

83.     The agent asked Plaintiff a few questions, and apparently, after realizing Plaintiff was attempting to identify the offenders, the conversation ended as follows:

   a.   Agent: And how long have you been a faggot?

   b.   Answer: How long what?

   c.   Agent: How long have you been a faggot? And your mother, does she know about that? Yes or no?

   d.  Answer: I did not hear what you said.

   e.  Agent: I said does your mother, does your mother, the one you came out of her vagina, right, does she know that you are a fagot, sir? Yes or no?

   f.  Answer: I am not sure I heard you correctly.

   g.  Agent: Okay, okay, listen here bitch, the next time that you feel like answering these phone calls and, you know, wanting to waste peoples time, etc., whatever however you get off right, these phone calls, save your energy bro, put it in something better, you just, it doesn't make sense to deliberately waste peoples time, it might not be intentional as far as you getting the phone calls, but there ya go, it's America, go fuck yourself.

   h.  The agent then terminated the call.

84.    In total, the Defendants caused not less than thirty (30) calls to be placed to Plaintiff's cellphone using spoofing, ATDS, and prerecorded messages, while Plaintiff's number was on federal and state do-not-call registries, and thereafter caused not less than three (3) direct calls to Plaintiff's cellphone without consent.

85.    Astonishingly, the calls continued, using the same prerecorded message and a variety of spoofed numbers, often several times a day, for several weeks.

86.    At no time did any of the spoofed callers identify themselves accurately or as calling on behalf of the Defendants. To the contrary, as the prerecorded messages suggested the Defendants, using bogus names, were calling on behalf of various major insurers, which was a misrepresentation.

87.    At no time did Plaintiff provide the Defendants with consent to call him.

88.    The only way it was possible for Plaintiff to identify the Defendants was to provide payment information.

89.    On August 3, 2018, Plaintiff sent the Defendants and their attorney a demand letter ("Demand Letter"), via email, containing an immediate demand, a five-day demand, and a 30-day demand under the provisions of the Massachusetts Consumer Protection Act. A true copy of a demand letter is attached herewith as **"Exhibit 5"** and incorporated herein by reference.

90.     The Demand Letter demanded, among other things, the Defendants immediately provide their do-not-call policy, the name of the agents operating on their behalf, if any, and that the calls immediately stop.

91.     The Demand Letter also demanded actual and statutory damages under the federal Telephone Consumer Protection Act, the Massachusetts Telephone Solicitations Act, within five days, and actual damages under G.L. c. 93A within 30 days.

92.     The Defendants did not respond to the Demand Letter with a reasonable offer.

93.     At all times relevant, the Defendants utilized the services of one or more telemarketing agents to cold call and worked in concert with them to generate insurance leads.

94.     Plaintiff states on information and belief that the Defendants' agent telemarketers, at all times relevant, were not registered with the Massachusetts Office of Consumer Affairs and Business Regulation—a fact that the Defendants either knew or should have known.

95.     At all times relevant, the Defendants authorized the agent telemarketers to solicit business on their behalf through the use of telemarketing.

96.     At all times relevant, the Defendants had control over the agent telemarketers' actions on the Defendants' behalf.  For example:

    a.    The Defendants limited the type of businesses their agent telemarketers could solicit for the Defendants.

    b.    The Defendants decided whether, and under what circumstances, they would accept a lead from their agent telemarketers.

    c.    The Defendants had day-to-day control over their agent telemarketers' actions, including the ability to oversee and prohibit their agent telemarketers from using an ATDS, illegal spoofing, and other illegal methods to contact potential customers on Defendants' behalf.

97.     At all times relevant, the Defendants compensated their agent telemarketers for each lead or sale generated on Defendants' behalf.

98.     At all times relevant, the agent telemarketers, with the knowledge and the assent of the Defendants, and as part of Defendants' marketing campaign, contacted Massachusetts consumers on their cellular telephones using caller ID "spoofing", artificial and prerecorded voices, and automatic telephone dialing systems ("ATDS") without the call recipients' prior express consent and while listed on the federal and Massachusetts do-not-call registries.

99.     At all times relevant, the agent telemarketers had the actual authority of the Defendants to make the illegal calls to Plaintiff complained-of herein.

100.    The calls placed to Plaintiff were within the scope of the agent telemarketers' actual or, in the alternative, apparent authority of the Defendants.

101.    At all times relevant, the Defendants directly and illegally profited from the agent telemarketers' aforementioned efforts and ratified the actions of the agent telemarketers by knowingly accepting the benefits of the agent telemarketers' illegal activities.

102.    The Defendants' phone harassment campaign and illegal solicitation activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, interrupted sleep, resulting in daytime somnolence, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, waste of time, diminished value and utility of his cell phone and subscription services, the wear and tear caused to his cell phone, the loss of battery charge, the loss of battery life, and per-kilowatt electricity cost required to recharge his cellular telephone as a result of increased usage of his cell phone services.

103.    The Defendants forced Plaintiff to have to expend time and effort in an attempt to identify the Defendants and attempt to get the Defendants to stop their harassing and unlawful activities, and as a result of same, Plaintiff incurred expense in the form of time, materials, and use of equipment.

104.    The Defendants conspired among themselves and with others to engage in the unlawful activities described herein and benefited from such activities to Plaintiff's harm.

**COUNT I**
**(Violations of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A))**
**(As to All Defendants)**

105.    The allegations of Paragraphs 1 through 105 of this Complaint are realleged and incorporated by reference.

106.    Plaintiff was a "person" as defined by TCPA, 47 U.S.C. §§ 227 et seq.;

107.    Each call the Name Defendants caused to be made to Plaintiff was a "telephone solicitation" as defined by TCPA. All that is required for a call to be considered a telephone solicitation is that it is encouraging the purchase of goods and services. The FCC has said, "We … decline to establish an exemption for calls made to set "face-to-face" appointments... We conclude that such calls are made for the purpose of encouraging the purchase of goods and services and therefore fall within the statutory definition of telephone solicitation." *See* In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, the CG Docket No. 02-278, FCC 03-153, July 3, 2003.

108.    Each call the Defendants initiated through their agents attempted to have Plaintiff purchase products and services from the Defendants.

109.    The Defendants violated 47 U.S.C. §227(b)(1)(A)(iii) by causing Plaintiff's cellphone to be called using an automatic telephone dialing system ("ATDS"), without Plaintiff's prior express written consent, and by use of a prerecorded message.

110.    The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

111.    Based on the pause and lack of prompt human response during the calls Plaintiff answered on his cell phone, the frequency of the calls, and the fact the calls were not specifically directed to Plaintiff based on any predetermined list of numbers, i.e., they were "cold calls," and that the calls continued after having already gone through the process of a potential sale, the defendant used a random or sequential number generator, and/or a predictive dialing system to place calls to Plaintiff's cell phone.

112.    "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

113.    "When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the capacity 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually, store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).

114.    The Federal Communications Commission ("FCC") has determined that predictive dialing systems are a form of automatic telephone dialing system. *Id.*

115.    The Defendants, through their agent, repeatedly violated 47 U.S.C. §227(b)(1)(A)(iii), by placing not less than thirty (30) telemarketing calls to Plaintiff's cellphone using ATDS and prerecorded message, without Plaintiff's prior express written consent.

116.    According to 47 U.S.C. § 227(b)(3)(B), the Defendants are liable to Plaintiff for a minimum of $500 per violation, or not less than $15,000 for the not less than thirty (30) violations under this Count.

117.    According to 47 U.S.C. § 227(b)(3)(C), willful or knowing violations of the TCPA trigger treble damages.

118.    Defendants' conduct in violation of 47 U.S.C. §227(b)(1)(A)(iii) was willful and knowing.

119.    Plaintiff is therefore entitled under this count to $15,000 in single damages, trebled to $45,000, for the Defendants' willful and knowing violations.

## <u>COUNT II</u>
**(Violations of TCPA Privacy Provisions as Promulgated under 47 U.S.C. §227(c)(1) to (4))**
**(As to All Defendants)**

120.    The allegations of Paragraphs 1 through 120 of this Complaint are realleged and incorporated by reference.

121.    A private right of action exists pursuant to 47 U.S.C.A. § 227(c)(5) of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 for violation of the Federal Communications Commission's (FCC) national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4).

122.    47 C.F.R. § 64.1200(c) and (d) sets forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call. Prior to initiating telemarketing calls, the person or entity placing the call must adopt specific standards. *Id*. For example, the telemarketer "must have a written policy, available upon demand, for maintaining a do-not-call list."  A violation of subsection (d) gives rise to liability under 47 U.S.C. § 227(c)(5).

123.    The Defendants and their agents violated 47 C.F.R. § 64.1200(d) by causing telephone solicitation calls to be made to Plaintiff's cellphone without first instituting procedures for maintaining a list of persons who do not wish to receive telephone solicitations made by or on behalf of Defendants, and this gives rise to liability under 47 U.S.C. § 227(c)(5).

124.    The Defendants and their agents violated 47 C.F.R. § 64.1200(d)(1) by failing to provide Plaintiff, upon his demand, a do-not-call policy, and this gives rise to liability under 47 U.S.C. § 227(c)(5).

125.    The Defendants and their agents violated 47 C.F.R. § 64.1200(d)(3) by and through the course of Defendant initiating calls to Plaintiff for the purposes of a telemarketing solicitation by repeatedly failing to honor Plaintiff's do-not-call requests and continuing to call Plaintiff after such requests and called the Plaintiff not less than thirty (30) times, and this gives rise to liability under 47 U.S.C. § 227(c)(5), per call.

126.    The Defendants and their agents violated 47 C.F.R. § 64.1200(c)(2), by engaging in a pattern or practice of initiating telephone solicitations to Plaintiff's cellphone while said telephone number, at all times relevant, was listed on the Federal Trade Commission's do not call registry, and this gives rise to damages under 47 U.S.C. § 227(c)(5).

127.    During the Defendants' and agent's telemarketing solicitations, the Defendants and their agents violated 47 C.F.R. § 64.1200(d)(4) by failing to provide Plaintiff with a telephone number or address for Defendant, and this gives rise to liability under 47 U.S.C. § 227(c)(5).

128.    The conduct in the preceding paragraphs under this Count total not less than thirty (30) violations of the TCPA.

129.    Pursuant to 47 U.S.C.A. § 227(c)(5) and the regulations promulgated thereunder, the Defendants are liable to Plaintiff for a minimum of $500 per violation of the TCPA, or not less than $15,000 for the not less than thirty (30) violations under this Count.

130.    Defendants' conduct in violation of 47 U.S.C.A. § 227(c)(5) and the regulation promulgated thereunder were willful and knowing.

131.    Plaintiff is therefore entitled under this count to $15,000, in single damages, trebled to $45,000, for the Defendants' willful and knowing violations.

### <u>COUNT III</u>
**Violations of the Massachusetts Telemarketing Solicitation Act, G.L. c. 159C**
**(As to All Defendants)**

132.    The allegations of Paragraphs 1 through 132 of this Complaint are realleged and incorporated by reference.

133.    G.L. c. 159C, a Massachusetts law with more stringent penalties than the Federal Telephone Consumer Protection Act, imposes limitations on making unsolicited telephonic sales calls and prohibits circumventing the use of caller identification.  Specifically:

> G.L. c. 159C § 3 states that "[a] telephone solicitor shall not make or cause to be made an unsolicited telephonic sales call to a consumer: (i) if the consumer's name and telephone number appear on the then current quarterly no sales solicitation calls listing made available by the office under section 2… or (iv) by use of a recorded message device."

G.L. c. 159C § 4 states that "[n]o telephone solicitor shall intentionally cause to be installed or shall intentionally use a blocking device or service to circumvent a consumer's use of a call identification service or device."

134.    The Defendants, through their agents, made not less than then thirty (30) calls to Plaintiff while on the do-not-call list, before Plaintiff expressed interest to identify the offenders, violating G.L. c. 159C § 3 (i) thirty- (30) times.

135.    The Defendants, through their agents, called Plaintiff using a recorded message device not less than thirty (30) times, violating G.L. c. 59C § 3 (iii) thirty (30) times.

136.    The Defendants, through their agents, called Plaintiff in a manner circumventing the use of a caller identification device not less than thirty (30) times, violating G.L. c. 59C § 4 thirty (30) times.

137.    The Defendants then made three (3) direct calls, while Plaintiff was listed on the Massachusetts do-not-call registry, violating G.L. c. 159C § 3 (i) three (3) more times.

138.    The Massachusetts Code of Regulations, 201 CMR 12.02 (6), states that "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers must institute procedures for honoring the list of Massachusetts consumers who have elected not to receive unsolicited telephonic sales calls in compliance with M.G.L. c. 159C and 201 CMR 12.00 et seq.," and further, "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers shall, at the beginning of such call, disclose [(b) the correct name of the telemarketing company that employs the individual telemarketer who is making the call; [and] (c) the correct name of the ultimate seller whose goods or services are being offered by means of the telemarketing call] … within the first minute of a telephonic sales call …"

139.    The Defendants did not disclose their own identity or on whose behalf they were calling, violating 201 CMR 12.02 (6), and thus G.L. c. 159C, not less than thirty-three (33) more times.

140.    The Defendants and their agents failed to establish or implement, with due care, reasonable practices and procedures to effectively prevent unsolicited telephonic sales calls to Plaintiff, in violation of G.L. c. 159, and the Defendants' agents failed to disclose the true name of the

telemarketing company that employs the individual telemarketer who made the calls, and failed to disclose the name of the ultimate seller, i.e., the Defendants, whose goods or services were being offered by means of the telemarketing call.

141.    Plaintiff is entitled to mandatory statutory damages of $5,000 per each of the not less than one hundred and twenty-six (126) violations (not counting violations of the CMR), or not less than $630,000 in statutory damages. *See* G.L. c. 159C § 8(b).

142.    Plaintiff is entitled to statutory damages separate and apart from those under any other federal or state cause of action as "[t]he remedies, duties, prohibitions, and penalties provided in [G.L. c. 159C] shall not be exclusive and shall be in addition to all other causes of action, remedies and penalties provided by law, including any applicable remedies pursuant to chapter 93A."  *See* G.L. c. 159C § 13.

**COUNT IV**
**Invasion of Privacy by Intrusion Upon Seclusion**
**(As to All Defendants)**

143.    The allegations of Paragraphs 1 through 143 of this Complaint are realleged and incorporated by reference.

144.    G.L. c. 214, § 1B, inserted by St. 1974, c. 193, § 1, provides in relevant part: "A person shall have a right against unreasonable, substantial or serious interference with his privacy."

145.    The *Restatement of Torts, Second*, § 652(b) defines intrusion upon seclusion as "One who intentionally intrudes … upon the solitude or seclusion, or his private affairs or concerns, is subject to liability to the other for invasion of privacy. If the intrusion would be highly offensive to a reasonable person."

146.    Massachusetts further recognizes Plaintiff's right to be free from invasions of privacy, thus defendants violated Massachusetts state law.

147.    The Defendants intentionally intruded upon Plaintiff's right to privacy by causing Plaintiff's cellphone to be called numerous times while Plaintiff's number was included on Federal and State do-not-call registries.

148.    The telephone calls the Defendants caused to be made to Plaintiff's cellphone were so intrusive as to be considered "hounding the plaintiff," and "a substantial burden to his existence," thus satisfying the *Restatement of Torts, Second*, § 652(b) requirement for an invasion of privacy.

149.    The conduct of the Defendants resulted in multiple invasions of privacy in such a way as would be considered highly offensive to a reasonable person.

150.    As a result of the intrusions and invasions, and in light of the substantial harms Plaintiff suffered, Plaintiff is entitled to damages.

<u>**COUNT V**</u>
**Violations of the Massachusetts Consumer Protection Act, G.L. c. 93A**
**(As to All Defendants)**

151.    The allegations of Paragraphs 1 through 151 of this Complaint are realleged and incorporated by reference.

152.    At all times relevant the Defendants were engaged in trade or commerce within the meaning of G.L. c. 93A §2.

153.    The Defendants have engaged in unfair and deceptive practices declared unlawful by G.L. c. 93A. Such acts of unfair competition include, but are not limited to, violations of the Telephone Consumer Protection Act, and the Massachusetts Telephone Solicitations Act, and the unreasonable invasion of Plaintiff's privacy and intrusion upon his seclusion.

154.    Violations of the Telephone Consumer Protection Act and the Massachusetts Telephone Solicitations Act are separate *per se* violations of G.L. c. 93A.

155.    In addition to violating the provisions of the TCPA under which a private right of action may be brought, the Defendants also violated the *criminal* provision, which is also per se unfair and deceptive. Specifically, the defendants, without being exempted under 47 U.S.C. § 227 (e)(3)(B), on numerous occasions, violated 47 U.S.C. § 227(e)(1), by causing a caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain things of value.

156.    The Defendants violated the criminal provision, i.e., used false caller identification information to mislead those being called, and coercing those called into answering, so to produce sales, i.e., a thing of value.

157.    The regulations promulgated by the Massachusetts Attorney General, 940 C.M.R. 3.16, state that "[w]ithout limiting the scope of any other rule, regulation or statute, an act or practice is a violation of G.L. c. 93A, § 2 if "… (4) [i]t violates the Federal Trade Commission Act … or other Federal Consumer Protection statutes within the purview of M.G.L. c. 93A, § 2.".

158.    It was unfair for the Defendants to harass Plaintiff through harassing telemarketing calls to Plaintiff's cellphone without his prior express written consent, and after Defendants were made aware Plaintiff did not want such calls.

159.    The Defendants systematically placed, on a large scale, unsolicited and harassing telemarketing calls to consumers in Massachusetts in order to aggressively market health insurance-related products and services, which results in substantial injury to Massachusetts consumers in the form of invasions of privacy, while giving the Defendants an unfair competitive advantage over businesses that solicit business lawfully.

160.    The Defendants' phone harassment campaign that has been unleashed onto Plaintiff is against public policy, immoral, unethical, and oppressive, and caused Plaintiff substantial harm.

161.    Plaintiff sent the Defendants a 30-day Massachusetts Consumer Protection Act, G.L. c. 93A, Demand Letter, to which Defendants failed to respond with a reasonable offer.

162.    The Defendants' violations of G.L. c. 93A were willful and knowing.

163.    As a direct and proximate cause of the Defendants' actions, Plaintiff suffered the harms alleged herein.

164.    Plaintiff is entitled to an award of his actual damages, and the multiplication of same under the provisions of G.L. c. 93A, as to each of the Defendants, without the right of contribution.

165.    An award of punitive damages is appropriate because Defendants' conduct described above was outrageous, willful, and wanton, and showed reckless disregard for the rights of Plaintiff and Massachusetts consumers, generally.

<u>**COUNT VI**</u>
**Conspiracy**
**(As to All Defendants)**

166.    The allegations of Paragraphs 1 through 166 of this Complaint are realleged and incorporated by reference.

167.    The Defendants, under an agreement with its agents, i.e., the undetermined parties who acted on the Defendants' behalf, acted in concert to commit unlawful acts, specifically, to call persons throughout Massachusetts, including Plaintiff, using spoofed caller identification, and without Plaintiff's prior consent, using ATDS and prerecorded messaging while the numbers they were calling, including Plaintiff's, were listed on do-not-call registries, from which the Defendants and their agents sought to profit and seek competitive advantages, at the expense of Plaintiff's privacy rights and to his harm, and to a goal the conspiring Defendants and their agents would not have been able to accomplish had they acted independently.

<u>**COUNT VII**</u>
**Claims Against the John and/or Jane Doe(s) and/or XYZ Company**

168.    The allegations of Paragraphs 1 through 168 of this Complaint are realleged and incorporated by reference.

169.    To the extent any claim made in this complaint against the Defendants are attributable solely against any unknown defendant(s), or in the event that any unknown defendant(s) may be jointly and/or severally liable, such claims are incorporated in this Count by reference, and upon discovery of all the true identities of any unknown defendants, and/or in the event Plaintiff decides such defendants should be added, this complaint shall be amended.

**WHEREFORE**, as to all Counts, the Plaintiff requests that this Court:

1.  Enter judgment for the Plaintiff against the Defendants and other conspirators as may be so determined;

2. Pursuant to the provisions of the TCPA, award statutory damages of not less than $500 for each of the not less than sixty (60) violations thereof, or $30,000, and treble same for knowing and intentional violations thereof as provided thereunder, to not less than $90,000, as to the Defendants and other conspirators as may be so determined;

3. Pursuant to the provisions of the Massachusetts Telemarketing Solicitations Act, award statutory damages of not less than $5,000 for each of the not less than one-hundred and twenty-six (126) violations thereunder, or $630,000, as provided under G.L. c. 159C § 8(b)(ii), as to the Defendants and other conspirators as may be so determined;

4. As to Plaintiff's claim for invasion of privacy and intrusion upon seclusion, award actual damages of not less than $10,000 as Plaintiff sought in his G.L. c. 93A Demand Letter, as to the Defendants and other conspirators as may be so determined;

5. Pursuant to the Massachusetts Consumer Protection Act, apply actual damages and treble same as to each of the Defendants and other conspirators as may be determined, without the right of contribution, as punitive damages as provided under G.L. c. 93A §9(3);

6. Enjoin the Defendants and conspirators from making further telemarketing calls to Plaintiff's cellphone or others in Massachusetts as provided under the Massachusetts Telemarketing Solicitations Act, G.L. c. 159C § 8(b)(i);

7. Order disgorgement of the Defendants profits gained from their illegal conduct;

8. Award interest, costs, and attorney's fees (if any); and such other relief as this Court deems just and proper.

Plaintiff,

/s/ Robert A. Doane

_____

Robert A. Doane, Pro Se

Date:  ~~XXXXXXXXXXXXXX~~

January 14, 2022

Exhibit 1

# Exhibit 1

**From:** **Verify@donotcall.gov** Verify@DonotCall.gov 
**Subject:** National Do Not Call Registry - Your Registration Is Confirmed
**Date:** July 22, 2016 at 2:02 PM
**To:** robertdoane@rcn.com

---

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 2552 on November 08, 2014. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov  to register another number or file a complaint against someone violating the Registry.

*************************************************************************************************************

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.

Exhibit 2

# Exhibit 2

**From:** **Health Insurance Innovations** echosign@echosign.com
**Subject:** Please sign Application Form of VitalaCare
**Date:** June 5, 2018 at 3:18 PM
**To:** robertdoane@rcn.com







# Health Insurance Innovations Has Sent You **Application Form of VitalaCare** to Sign

Click here to review and sign **Application Form of VitalaCare.**

After you sign **Application Form of VitalaCare**, all parties will receive a final PDF copy by email.

This document is available for signing until June 7, 2018 and will expire thereafter.

© HiiQuote.com

To ensure that you continue receiving our emails, please add echosign@echosign.com to your address book or safe list.

Exhibit 3

# Exhibit 3



HEALTH
INSURANCE
INNOVATIONS



## Dear Robert Doane,

Thank you for requesting membership in National Congress of Employers and applying for VitalaCare. Once your application is approved and payment is processed, your policy will go into effect 12:01 am on 07/01/2018.

You will be charged $411.17 for your first month of insurance coverage on 06/30/2018. Future charges to your account will be $286.17 and will be made on the 1st of each month starting 08/01/2018.

 **Your Coverage**

VitalaCare
Lifeshield National Co
$124.23

Teladoc 24/7 doctor visits by telephone
$29.99

Association Dues
$12.50

Rx Helpline
$19.00

Health Education program (PEP)
Online health education & fitness training
$125.00

Freedom Spirit Plus Cost inclusive of monthly Med-Sense Dues & Plan Cost
Federal Insurance Company
$100.45 per month

Total
$411.17

By signing, you acknowledge you have reviewed and understand the details of your purchase and the charges related to your purchase.

Applicant Signature:

Date:

Health Insurance Innovations
218 E Bearss Ave, Ste 325
Tampa, Florida
www.hiiquote.com
877-376-5831

# LifeShield National Insurance Co®

Home Office: 5701 N. Shartel Ave., 1st Floor
Oklahoma City, OK 73118
Toll-Free Telephone Number: 1-800-279-2290

Please print clearly illegible enrollment forms will not be processed

| Member's Last Name | First Name | Middle Initial | Sex ✓ M   ( ) F |
|---|---|---|---|
| Doane | Robert | | |

| Street Address: | Apt. | City | State | Zip |
|---|---|---|---|---|
| 11266 SW 156 Ave | | Miami | FL | 33196 |

| Date of Birth: Month/Day/Year | Telephone: | Work |
|---|---|---|
| 05-10-1965 | 781-504-2552 | |

Marital Status:
( ) Single      ( )Married     ( )Divorced     ( )Widowed

Dependents to be covered

| Last Name | First Name | SS# | Date of Birth: Month/Day/Year |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Plan Option:  1            2            3

| ACCIDENTAL DEATH INSURANCE Amount Requested: | ☐ Member       ☐ Spouse         ☐ Dependent $              $               $ |
|---|---|

ACCIDENTAL DEATH INSURANCE BENEFICIARY DESIGNATION
Primary:      Name:                                      Relationship:
                    (Last)          (First)      (Middle Initial)

Contingent:   Name:                                      Relationship:
                    (Last)          (First)      (Middle Initial)

IMPORTANT:  I understand these benefits are provided under a group insurance policy underwritten by LifeShield National Insurance Co and are subject to exclusions, limitations and conditions of coverage which include, but are not limited to, an exclusion for pre-existing conditions.  I certify that I have read or had read to me the completed enrollment form and the answers given are complete and true to the best of my knowledge and belief.

By signing below I indicate my desire to enroll in a plan of limited medical benefits issued by LifeShield National Insurance Co.

## THIS IS A SUPPLEMENT TO HEALTH INSURANCE AND IS NOT A SUBSTITUTE FOR MAJOR MEDICAL COVERAGE. LACK OF MAJOR MEDICAL COVERAGE (OR OTHER MINIMUM ESSENTIAL COVERAGE) MAY RESULT IN AN ADDITIONAL PAYMENT WITH YOUR TAXES.

LNIC GRP FI ENR 217

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit, or knowingly presents false information in an application for insurance may be guilty of a crime and subject to fines, confinement in prison and/or denial of insurance benefits.

Fraud Warning for Arkansas and Louisiana: Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application is guilty of a crime and may be subject to fines and confinement in prison.

Member must sign here: _____ Date: _____

To be completed by Group:

| Name of Group: National Congress of Employers | Group Number: | Effective Date: 07/01/2018 |
|---|---|---|
| Date Submitted: 06-05-2018 | Approved By: | Processed Date: |



# FEDERAL INSURANCE COMPANY

202 Hall's Mill Road, P.O. Box 1600, Whitehouse Station, New Jersey 08889

## Enrollment Form – Voluntary Accident Insurance

**POLICYHOLDER:** Med-Sense Guaranteed Association          **POLICY NUMBER:**     9907-71-53

| **Enrollee Full Name:** Robert Doane |
|---|

| **Address:** 11266 SW 156 Ave, Miami, FL, 33196 |
|---|

**Plan Option:**               ☑ Enrollee only

**Coverage Description:**

**Accidental Death & Dismemberment ("AD&D") Plan Option:**

**Premium Information:**

| Election Option | Monthly Rate per $1,000 of Insurance elected |
|---|---|
| Enrollee Only | $0.03 |

**Monthly Rate**

| If you elect a benefit amount of: | 175,000 |
|---|---|
| | ☐   5.25 |

Example

| Benefit Amount: | $50,000 | $100,000 | $110,000 | $250,000 |
|---|---|---|---|---|
| | $1.50 | $3.00 | $3.30 | $7.50 |

| **Beneficiary :** | ESTATE |
|---|---|
| **Relationship:** | ESTATE |

| **Contingent Beneficiary:** | ESTATE |
|---|---|
| **Relationship:** | ESTATE |

1

GCA-7153-EN

**Names of Person to be covered:**

| Enrollee: Robert Doane | Date of Birth: 05-10-1965 |
|---|---|

# THIS IS A SUPPLEMENT TO HEALTH INSURANCE AND IS NOT A SUBSTITUTE FOR MAJOR MEDICAL COVERAGE.  LACK OF MAJOR MEDICAL COVERAGE (OR OTHER MINIMUM ESSENTIAL COVERAGE) MAY RESULT IN AN ADDITIONAL PAYMENT WITH YOUR TAXES.

**Insurance Acceptance:**

The undersigned represents to the best of his or her knowledge and belief that all information provided in this enrollment and any attachments hereto is true and correct. The undersigned understands that all information provided in this enrollment form and any attachments hereto is material to the Company's decision to provide this insurance, and that insurance will be provided in reliance upon the truth of such information. It is hereby agreed and understood this insurance is provided by the Company in consideration of payment of the required premium.  The insurance begins on the later of: 1) on the date the policy is effective which is June 1, 2015; or 2) when We accept the eligible person's enrollment form.

**THE POLICY PROVIDES LIMITED BENEFITS.  REVIEW THE POLICY AND YOUR DESCRIPTION OF COVERAGE CAREFULLY.**

_____          _____

Date                         Enrollee's Signature

**Fraud Warning Notices:**  Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act, which is a crime. Penalties include imprisonment and/or fines.  In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the enrollee or Insured Person.

**Notice to Arkansas, Louisiana Minnesota, New Mexico and Ohio Applicants:**  Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false, fraudulent or deceptive statement is, or may be found to be, guilty of insurance fraud, which is a crime, and may be subject to civil fines and criminal penalties.

**Notice to Maryland and Rhode Island Applicants:**  Any person who knowingly presents a false or fraudulent claim for payment of a loss or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Notice to Colorado Applicants:**  It is unlawful to knowingly provide false, incomplete or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company.  Penalties may include imprisonment, fines, denial of insurance, and civil damages.  Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or

2

GCA-7153-EN

misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory agencies.

**Notice to Maine, Tennessee and Virginia Applicants:**  It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties may include imprisonment, fines or a denial of insurance benefits.

**Notice to District of Columbia Applicants:** WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant."

**Notice to Florida and Oklahoma Applicants:**  Any person who, knowingly and with intent to injure, defraud or deceive any employer or employee, insurance company, or self-insured program, files a statement of claim containing any false or misleading information is guilty of: a felony (in Oklahoma) or a felony of the third degree (in Florida).

**Notice to Kentucky Applicants:**  Any person who, knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any material fact thereto, commits a fraudulent insurance act which is a crime.

**Notice to New Jersey Applicants:**  Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

**Notice to Oregon and Texas Applicants:**  Any person who makes an intentional misstatement that is material to the risk may be found guilty of insurance fraud by a court of law.

**Notice to New York and Pennsylvania Applicants:**  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to: a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation (in New York) or criminal and civil penalties (in Pennsylvania).

**Notice to Washington Applicants:**  It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the Company.  Penalties include imprisonment, fines and denial of insurance benefits.

GCA-7153-EN



# NCE Membership Application

**Tell us about yourself...** * REQUIRED FIELD

* First name  Robert

* Last name  Doane

Street address  11266 SW 156 Ave

Address line 2 ( Apt # )

City  Miami          State  FL          Zip  33196

* Email address  robertdoane@rcn.com

* Daytime phone number  781-504-2552          **AREA CODE FIRST**

Industry

Occupation

Please accept my application for membership in the National Congress of Employers (NCE). I agree to adhere to the principles and standards of the association as set forth in the **Constitution and By-Laws.**  I understand that my membership fee is inclusive of dues, administrative and marketing fees and the cost of any benefit programs you elect to purchase.. All fees will be apportioned between the NCE and its benefit and service providers. I understand benefits are offered at the sole discretion of the NCE and availability of specific benefits may vary by provider and by my state of residence. I understand that the NCE is committed to providing the maximum value for my membership and therefore, specific benefits are subject to change or cancel without notice. I also understand that I can cancel my membership in the NCE at any time by calling or writing to the address below. I understand and agree that my membership in the NCE will not become effective until payment in full has been received by the NCE, that my member benefits are only available to members in good standing. In the event that my membership lapses do to a failure to pay dues will terminate and void my membership in the NCE.

Signature of Member

The National Congress of Employers
1000 N West Street
Ste 1200
Wilmington DE 19801
Tel: 302-295-4903 Fax: 302-295-4801
Toll Free: 1-888-886-1796

## Med-Sense Guaranteed Association

- Please verify your understanding that you are purchasing a membership in the Med-Sense Guaranteed Association.  As a member of this association, you are entitled to many benefits such as Sprint, ID resolution, floral discounts, gym America, vitamin discounts, car rental, and car perks.
- You understand that you are not required to purchase Freedom Spirit Plus                  and there are MSGA plan memberships available that do not include Freedom Spirit Plus.                  Please email info@medsensemembers.com to inquire about purchasing a stand-alone membership.
- **NOTICE OF CONSENT TO ELECTRONIC TRANSACTIONS, SIGNATURES AND DOCUMENTS** I **consent to use of electronic signatures of documents, which would otherwise only be valid if they were in writing.**  I understand that Health Insurance Innovations will rely on my signature as consent to receive the documents electronically unless I revoke this consent. I can update my information or revoke this consent at any time by calling Health Insurance Innovations Customer Service Center at 1-877-376-5831 or emailing to: support@hiiquote.com. If you decide to withdraw your consent, the legal validity and enforceability of electronic transactions and signatures used prior to the withdrawal will not be affected. I may request specific documents at no cost in paper form at any time without revoking this consent. I agree to review the application produced by this voice signature carefully to ensure my understanding of all provisions of the coverage.

**Applicant Signature:** [                                    ] **Date:**

## ScripPal

- This program provides DISCOUNTS ONLY and is NOT INSURANCE. Discounts are available only through participating pharmacies and providers. This program does not make payments directly to providers. Members are required to pay for all health care services. You may cancel your registration at any time or file a complaint by contacting Customer Care at 1-866-788-6846. All prescription drugs are eligible for discount.

- **NOTICE OF CONSENT TO ELECTRONIC TRANSACTIONS, SIGNATURES AND DOCUMENTS** I **consent to use of electronic signatures of documents that would otherwise only be valid if they were in writing.** I understand that Health Insurance Innovations will rely on my signature as consent to receive the documents electronically unless I revoke this consent. I can update my information or revoke this consent at any time by calling Health Insurance Innovations Customer Service Center at 1-877-376-5831 or emailing to: support@hiiquote.com. If you decide to withdraw your consent, the legal validity and enforceability of electronic transactions and signatures used prior to the withdrawal will not be affected. I may request specific documents at no cost in paper form at any time without revoking this consent. I agree to review the application produced by this voice signature carefully to ensure my understanding of all provisions of the coverage.

**Applicant Signature:** [_____]**Date:**

# RxHelpline Terms and Conditions

The RxHelpline is a prescription savings program that helps you save money on your prescription medications.

RxHelpline is NOT insurance and this program does not make payments directly to providers. Members are required to pay for all health care services.

**RxHelpline** does not make nor is authorized to make decisions about acceptance, denial or the management of any individual manufacturers program. **RxHelpline** does not act as a dispensing pharmacy and is not responsible for prescription information contained in any application as provided by the patient or their prescribing physician.

**NOTICE OF CONSENT TO ELECTRONIC TRANSACTIONS, SIGNATURES AND DOCUMENTS** I consent to use of electronic signatures of documents that would otherwise only be valid if they were in writing. I understand that Health Insurance Innovations will rely on my signature as consent to receive the documents electronically unless I revoke this consent. I can update my information or revoke this consent at any time by calling Health Insurance Innovations Customer Service Center at 1-877-376-5831 or emailing to: support@hiiquote.com. If you decide to withdraw your consent, the legal validity and enforceability of electronic transactions and signatures used prior to the withdrawal will not be affected. I may request specific documents at no cost in paper form at any time without revoking this consent. I agree to review the application produced by this voice signature carefully to ensure my understanding of all provisions of the coverage.

Applicant Signature                              Date

# **Teladoc Terms & Conditions**

Teladoc is NOT insurance and this program does not make payments directly to providers. Members are required to pay for all health care services.

TeleDoc does not replace the primary care physician. TeleDoc does not guarantee that a prescription will be written. TeleDoc operates subject to state regulation and may not be available in certain states. TeleDoc does not prescribe DEA controlled substances, non-therapeutic drugs and certain other drugs which may be harmful because of their potential for abuse. TeleDoc physicians reserve the right to deny care for potential misuse of services.

**NOTICE OF CONSENT TO ELECTRONIC TRANSACTIONS, SIGNATURES AND DOCUMENTS** I consent to use of electronic signatures of documents that would otherwise only be valid if they were in writing. I understand that Health Insurance Innovations will rely on my signature as consent to receive the documents electronically unless I revoke this consent. I can update my information or revoke this consent at any time by calling Health Insurance Innovations Customer Service Center at 1-877-376-5831 or emailing to: support@hiiquote.com. If you decide to withdraw your consent, the legal validity and enforceability of electronic transactions and signatures used prior to the withdrawal will not be affected. I may request specific documents at no cost in paper form at any time without revoking this consent. I agree to review the application produced by this voice signature carefully to ensure my understanding of all provisions of the coverage.

Applicant Signature                                    Date

# E Terms & Conditions Acknowledgement

I understand and authorize my next month's payment and re-occurring monthly payments thereafter will be automatically processed from my account each month until I request termination of the coverage or the coverage reaches its natural termination date. I understand that if I cancel my insurance or if HII is unable to collect my payment on my bill date my insurance and benefits will be cancelled. I agree to review my policy and certificate for a list of any exclusions, limitations and acknowledgements specific to my state. I may request a full refund of my policy within my **free look** period as described in my plan documentation. I understand that my plan documentation will be available electronically and that I may request to have physical documents mailed to me at no cost by contacting Health Insurance Innovations. I will also receive a copy of the welcome letter and ID cards in the mail within 7 to 10 business days of my policy effective date. No representation by an agent or any other person shall be binding on Health Insurance Innovations or the Insurance carrier.

I authorize Health Insurance Innovations, Inc. and its agents or independent contractors to contact me at my current landline and/or cellular number and any future cellular phone number, email address, or wireless device with information related to my account, my policies, or to receive general information from HII. I also authorize HII and its agents and independent contractors to use automated telephone dialing equipment, artificial or pre-recorded voice or text messages, and emails in their efforts to contact me. Furthermore, I understand that this consent is not a condition for the purchase of my insurance policies, and I may withdraw this consent at any time by submitting my request in writing to HII.

**Applicant Signature:** _____ **Date:**

**You understand that short term medical insurance is not considered "minimum essential coverage" under the affordable care act, also known as "Obamacare," and that you may be subject to a tax penalty.**

You acknowledge that your agent has advised you that there is a specific timeframe for Open Enrollment in which you can enroll into a qualified Obamacare Plan and there are also special life events qualifying you to enroll OUTSIDE of open enrollment.  For information regarding Open Enrollment dates and life qualifying events outside Open Enrollment, please visit www.healthcare.gov.

**Applicant Signature:** _____ **Date:**

**SPOUSE'S ACKNOWLEDGEMENT** (*if applying for coverage*) I confirm that I have permission to answer health questions on behalf of my spouse and that I have full knowledge of my spouse's health history. Realize that coverage is provided based on statements and answers given on the application. Any incorrect or incomplete information regarding their medical history may result in loss of coverage or claim denial.

**NOTICE OF CONSENT TO ELECTRONIC TRANSACTIONS, SIGNATURES AND DOCUMENTS**

**I consent to use of electronic signatures of documents which would otherwise only be valid if they were in writing.** I understand that Health Insurance Innovations will rely on my signature as consent to receive the documents electronically unless I revoke this consent. I can update my information or revoke this consent at any time by calling Health Insurance Innovations Customer Service Center at 1-877-376-5831 or emailing to: support@hiiquote.com. If I decide to withdraw my consent, the legal validity and enforceability of electronic transactions and signatures used prior to the withdrawal will not be affected. I may request specific documents at no cost in paper form at any time without revoking this consent. I agree to review the application carefully to ensure my understanding of all provisions of the coverage.

**YOU ACKNOWLEDGE AND AGREE THAT, BY SIGNING, YOU ARE INDICATING THAT YOU HAVE READ, AND THAT YOU UNDERSTAND AND AGREE TO BE BOUND BY THESE TERMS, WHETHER OR NOT YOU HAVE ACCESSED YOUR POLICY DOCUMENTS.**

If you accept or agree to these Terms on behalf of another person, you represent and warrant that you have the authority to bind that person to these Terms and, in such event, "you" and "your" will refer and apply to all persons listed on the policy.

I understand Short-Term medical insurance is intended for temporary gaps in health insurance. It is not compliant with the federal Affordable Care Act and does not cover expenses related to pre-existing conditions.

**Applicant Signature:** [                    ]**Date:**

Exhibit 4

# Exhibit 4

**From:** support@hiiquote.com
**Subject:** Confirmation of application submission
**Date:** June 6, 2018 at 3:00 AM
**To:** robertdoane@rcn.com
**Cc:** perezhealthadvisors@outlook.com



**Dear Robert Doane,**

Thank you for choosing the VitalaCare plan. You selected the Delayed Payment Option on your application.

You must complete your eSignature Application Form before any payment is taken and your policy(s) go into effect. Please refer to...

- The email you received titled "Please sign Application Form of VitalaCare"

- Or, text message you received reading "Please follow the link to sign for your policy of VitalaCare"

Once you complete your eSignature, On 06-30-2018 your payment of $310.72 will be processed for your first month of coverage. After that, you'll be charged a $185.72 on the 01st of each month starting 08-01-2018.

If you don't sign and submit your eSignature, your payment will not be processed and your policy will not be issued.

If your VitalaCare application is approved and your payment is processed successfully, your policy will go into effect on 07-01-2018.

Sincerely,
Customer Support
**Health Insurance Innovations**
cc:perezhealthadvisors@outlook.com

Health Insurance Innovations
218 E Bearss Ave
Ste 325
Tampa, FL 33613



Exhibit 5

# Exhibit 5

## ROBERT A. DOANE

Martha's Vineyard Residence
Twenty-One New Lane and Seventy Blackthorn Road
West Tisbury, MA 02575
____
robertdoane@rcn.com

<u>Mailing Address</u>

103 Prospect Street                                                                    Tel: 781-245-6577
Wakefield, MA 01880                                                        Facsimile 888.712.2724

3 August 2018

## <u>CONFIDENTIAL AND URGENT</u>

*<u>Sent Via E-Mail</u>*
David A. Schnobrick, Esq.
Greenspoon Marder LLP
One Boca Place
2255 Glades Road, Suite 400-E
Boca Raton, FL  33431

*<u>Attorney for</u>*
Michael W. Kosloske, et al
Chief Executive Officer
Health Insurance Innovations, Inc.
15438 N. Florida Avenue, Suite 201
Tampa, FL 33613

> RE:   Immediate demand under the Federal Telephone Consumer Protection Act; and the Massachusetts Telephone Solicitation Act; and 30-day demand under the Massachusetts Consumer Protection Act

Mr. Kosloske et al.:

This demand letter is directed to Health Insurance Innovations LLC and to each of its officers/managers in their individual capacities (collectively "Health Insurance Innovations").

Health Insurance Innovations and its coconspirators have been determined responsible for, among other things, causing numerous calls to my cellphone in violation of the Telephone Consumer Protection Act 47 U.S.C. §227, et seq. ("TCPA"), and the Massachusetts Telephone Solicitation Act, G.L. c 159C, et seq. ("MTSA"), both *per se* violations of the Massachusetts Consumer Protection Act, G.L. c. 93A et seq.

Specifically, Health Insurance Innovations, over the course of the last several months, in an attempt to solicit the sales of health insurance products and services, caused, in a conspiracy with others, and without my prior express written consent, a total of not less than thirty (30) calls to my cellphone (781-504-2552) listed on the Federal Trade Commission's do-not-call registry using spoofing, i.e., deceptive caller identification that conceals the identity of the calling party, automatic telephone dialing

system ("ATDS"), and prerecorded messages, all in violation of various civil and criminal provisions of the TCPA and the MTSA, and also in violation of G.L. c. 93A.

These spoofed calls, using a variety of bogus numbers, would cause my phone to ring, and upon answering, play a prerecorded message attempting to solicit the sales of health insurance products. The following agents would claim to be with the "National Health Enrollment Center."  In order to identify those responsible and get the calls to stop, it was necessary to express interest in hopes the offenders would reveal who they were and who they were representing.

After numerous of these calls, some repeatedly using the same spoofed number (e.g., the calls from "781-680-1720" alone occurred on May 31, 2018 at 1:59 PM, June 1, 2018 at 12:13 PM, June 4, 2018, at 9:38 AM, 1:42 PM, and 4:30 PM, and June 5, 2018 at 9:23 AM, and 10:01 AM), attempts were made to identity those responsible.

After several unsuccessful attempts, on June 5, 2018, after the same prerecorded message attempting to solicit sales of health insurance, an agent got on the line claiming to be "Alex," again with the "National Health Enrollment Center." The agent claimed to be calling in response to a request for health insurance, when at no time was a request made. The agent asked for my first and last name, my age, and state. The agent was advised my residences were in Massachusetts and Florida. The agent claimed to be calling out of Fort Lauderdale Florida. The agent asked several other questions, and stated, "Okay, I am going to transfer you to a licensed agent, actually, since you are in Florida, she is right next to me, so I am going to grab her."

The next agent was female, claiming to be a "licensed agent." The agent asked several questions, and that she would get me a "full guarantee issue policy." The agent described the policy. In response to asking what company the policy was with, the agent stated, "Health Choice Plus," and "VitalaCare," underwritten by Federal Insurance Company, which she claimed was Chubb." The agent stated she would do an application. The agent asked several questions, and stated that there was a 30-day look period and if not satisfied during that period there would be a full refund. The agent asked for my email and address. After my Massachusetts address was provided, she claimed she required a Florida address. The agent was told that communications must be sent to my Massachusetts address only, and one of my Massachusetts addresses was provided. The agent stated there would be a one-time enrollment fee of $125, and the policy payments would be $411.17, and the agent then asked for my credit card information, and stated that information was required over the phone. The agent was asked to confirm that there was a 30-day look period and that a complete refund would be available if not satisfied during that period, and the agent stated "absolutely." The agent also indicated that no transaction would occur yet, until after a signature.

Credit card information was provided to the agent. The agent then provided what she claimed was her direct phone number (954-892-7575). The agent then stated she sent a link to my email, and that it needed to be signed, after which paperwork would come to my email and mail in Massachusetts.  The agent asked me to open the link on my email,

expecting me to sign while she was on the phone. The agent was told that my email could not be accessed while on the phone, that she would be called back, and if she could be called back on the number from which the call was received. The agent then indicated to call the number she provided (954-892-7575), and that this was her direct cellphone, and she could be called or texted. [1] The call was terminated.

Upon review of the email subsequently received, the header of the email read "Health Insurance Innovations." The email was from echosign@echosign.com. The reply to address was "webmaster@hiiquote.com." A link stated, "Click here to review and sign Application Form of VitalaCare." Upon clicking the link, the application revealed an address of "Health Insurance Innovations, 218 E. Bearss Ave, Ste 325, Tampa, Florida." The application was not signed.

Later, two calls (without consent) were received from 954-892-7575 at around 4:00 PM, and were not answered. A call was then received from 781-041-4061, from a local prefix, which was answered. The agent indicated an email was sent for me to sign, and that she was calling from the office of "Trishia Perez." The agent stated she was calling to find out the problem, that the email be opened, and my name signed. The agent was asked if she could be reached from the number she dialed. The agent then provided what she said was "Trishia's office number," which she indicated was 954-892-7575. The call was then terminated.

On June 6, 2018, an email was received from support@hiiquote.com, cc'd to perezhealthadvisors@outlook.com stating in relevant part, "You must complete your eSignature Application Form before payment is taken and your policy(s) go into effect."

Calls using several different spoofed numbers and the same prerecorded messages continued. After several of these calls, another attempt was made to determine the party responsible, to determine whether all the calls with the same prerecorded message were being made on behalf of Health Insurance Innovations.

On June 19, 2018, upon receiving a call from a spoofed number appearing as 781-601-9501, again with the prerecorded message offering health insurance, a live agent got on the line this time alleging to be "Nick," offering health insurance and asking the same several questions, with facts being substantially similar to the fact pattern described during the June 5th call. Answers to the agent's questions were provided. The agent indicated he would transfer the call to his "licensed agent."

The alleged licensed agent got on the line, and without identifying himself, stated, "Thank you for being transferred over to National Health Enrollment." The agent then claimed to be recording the call, which oddly, is the first time an agent claiming to be

---

[1] An Internet search revealed the number was owned by Ruslan Atanasov Shopov, 3316 Nw 101st Ave, Sunrise FL 33351-6939. White pages revealed "Trisha Perez" was related, and at the same address under family and previous owners. A search of Trishia Perez on Florida's corporation's registry revealed a company known as "Perez Health Advisors" of 3225 N Hitatus Rd, Sunrise FL 33345. Ruslan Shopov is associated with the company known as PBSJ Inc., formed about the same time, with address of 3316 NW 101st Ave, Sunrise, FL 33351, and Tricia is an officer of PBSJ Inc., however, that Company is listed as doing truck and trailer repair.

with from National Health Enrollment ever disclosed the call was being recorded. The agent asked a few questions, and then the conversation ended as follows:

Agent:  How long have you been uninsured?

Answer: A couple years.

Agent: And how long have you been a faggot?

Answer: How long what?

Agent: How long have you been a faggot? And your mother, does she know about that? Yes or no?

Answer: I did not hear what you said.

Agent: I said does your mother, does your mother, the one you came out of her vagina, right, does she know that you are a fagot sir? Yes or no?

Answer: I am not sure I heard you correctly:

Agent: Okay, okay, listen here bitch, the next time that you feel like answering these phone calls and, you know, wanting to waste peoples time etc., whatever however you get off right, these phone calls, save your energy bro, put it in something better, you just, it doesn't make sense to deliberately waste peoples time, it might not be intentional as far as you getting the phone calls, but there ya go, its America, go fuck yourself.

The agent then terminated the call.

Astonishingly, the calls still continued thereafter repeatedly using the same prerecorded message and a variety of spoofed numbers, from those claiming to be from National Health Enrollment. The calls, sometimes occurring several times a day, continued to a point of utter harassment.

In total, Health Insurance Innovations caused not less than thirty (30) calls to be placed to my cellphone using spoofing, ATDS, and prerecorded messages, while my number was on federal and state do-not-call registries. At no time did any of the spoofed callers identify themselves as Health Insurance Innovations or as calling on behalf of Health Insurance Innovations until after an email was received identifying Health Insurance Innovations. In fact, the prerecorded message suggested they were calling on behalf of major insurers, which appears to be a misrepresentation. Despite the suggestion by the live agent that the call was in regards to my interest, at no time was my number provided to anyone with consent to call. It was also clear that the only way to identity the offenders was to fish out their identity, and actually start providing payment information, and absent doing so, it is unlikely Health Insurance Innovations and its conspirators

would have been identified nor would the calls ever end.

A private right of action exists pursuant to 47 U.S.C.A. § 227(c)(5) of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 for violation of the Federal Communications Commission's (FCC) national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4). 47 C.F.R. § 64.1200(c) and (d) sets forth certain procedures with which a telemarketer must comply prior to the initiation of a telemarketing call. Prior to initiating telemarketing calls, the person or entity placing the call must adopt specific standards. *Id.* For example, the telemarketer "must have a written policy, available upon demand, for maintaining a do-not-call list."   A violation of subsection (d) gives rise to TCPA liability under 47 U.S.C. § 227(c)(5).

Health Insurance Innovation's conduct violates numerous provisions of the TCPA and the regulations promulgated thereunder, with each violation subject to separate statutory damages of not less than $500 for negligent violations, and not more than $1,500 for willful and knowing violations. It is a violation of 47 U.S.C. §227(b)(1)(A)(iii) to cause, without prior express written consent, a cellphone to be called using an automatic telephone dialing system ("ATDS") and/or a prerecorded message. Cellphone are completely off limits for automated calls. See 47 C.F.R. § 64.1200(a)(iii). Failing to state the "individual, or other entity that is responsible for initiating the call," and the contact phone number, is also a violation. See 47 C.F.R. § 64.1200(b)(1)(2). Violations of these provisions provides a basis for statutory damages under 47 U.S.C. §227(c)(5) separate from violations of the Federal Communications Commission's (FCC) national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4). In other words, there can be two violations per call, with damages of $3,000 per call.

As to the Federal Communications Commission's (FCC) national do-not-call registry, 47 C.F.R. § 64.1200(c)(2) and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), and regulations promulgated pursuant to the TCPA protection of telephone subscriber privacy rights provisions, 47 U.S.C. § 227(c)(1) to (4), Health Insurance Innovation's conduct violates one or more of the following: (i) 47 C.F.R. § 64.1200(c)(2), by engaging in and/or causing a pattern or practice of initiating telephone solicitations to my cellphone while said number, at all times relevant, was listed on the Federal Trade Commission's do-not-call registry; (ii) 47 C.F.R. § 64.1200(d) by causing telephone solicitations to be made to my cellphone without first instituting procedures for maintaining a list of persons who do not wish to receive such calls; (iii) 47 C.F.R. § 64.1200(d)(1) by failing to provide, upon demand, a do-not-call policy; (iv) 47 C.F.R. § 64.1200(d)(3) by and through the course of initiating calls for the purposes of a telemarketing solicitation by repeatedly failing to honor do-not-call requests and continuing to call despite requests not to be called; (v) 47 C.F.R. § 64.1200(d)(4) by failing to provide a telephone number or address. Any one of the violations above are grounds for statutory damages under 47 U.S.C. § 227(c)(5).

Health Insurance Innovations has conducted its business in complete disregard of the TCPA and MTSA, and its conduct in any event "caused the calls to be made." Even if another party made some of the calls on its behalf, it still cannot escape liability. Further, Health Insurance Innovations, as well as its clients, may be held liable for its agents calls, as it is clear that Health Insurance Innovations acts as the agent of others, they too may be held liable, as well as to those who were called and are similarly situated.

Specifically, under Massachusetts law, as to torts other than negligence causing physical harm, "a principle [of a non-employee agent] is liable for the torts of his agent committed within the scope of his employment." *Red v. A.E. Little Co.*, 256 Mass. 442, 448, 152 N.E. 918, 920 (1926). See Am. Jur. 2d Agency § 264, p. 639 ("A principle is liable for the tortious acts of an agent which are done within the course and scope of the agent's employment."). Such torts include misrepresentation,[3] negligence,[4] invasion of privacy, and other intentional torts.[5] The principal's liability for such tortious acts of its agents is exclusively vicarious, having been imposed by operation of law notwithstanding the principal's lack of fault or involvement in the actionable transaction. *Medeiros v. Middlesex Ins. Co.*, 48 Mass. App. Ct. 51, 56-57, 716 N.E.2d 1076, 1080 (1999).

The TCPA, 47 U.S.C. § 227(c)(5), creating a private cause of action for violations of the Federal Communications Commission's ("FCC") national do-not-call registry, 47 C.F.R. § 64.1200(c)(2), and entity-specific do-not-call list, 47 C.F.R. § 64.1200(d), imposes liability on the telemarketer, and on the person or entity on whose behalf the telephone calls were made. In addition to the caller, the statutory and regulatory language creates vicarious liability in the seller for the calls made by its agents.

Specifically, under the TCPA, as interpreted by the FCC under federal common law, a person or entity can be liable for calls made on its behalf even if that person or entity did not directly dial those calls. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995). In 2008, the FCC reiterated, "a company on whose behalf a telephone solicitation is made bears the responsibility for any violations." See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991. Request of ACA International for Clarification and Declaratory Ruling, CG 02-278, 23 F.C.C.R. 559 at ¶10 (Jan. 4, 2008) (specifically recognizing "on behalf of" liability in the context of a

---

[3] See Restatement Third, Agency §§ 7.04, 7.08, comment c. See *Haskell v. Starbird*, 152 Mass. 117, 142 N.E. 695, 696 (1890); *Rousseau v. Gelinas*, 24 Mass. App. Ct. 154, 157-158, 507 N.E.2d 265, 268 (1987); *Makino, U.S.A., Inc. v. Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 313, 518 N.E.2d 519, 525 (1988); *Putnam v. DeRosa*, 963 F.2d 480, 483-484 (1st Cir. 1992) (applying Mass. law) (principal "is liable for harm flowing from the misrepresentations of its agents, made with its actual or apparent authority.").

[4] *New England Mica Co. v. Waltham Factories*, 301 Mass. 56, 60, 16 N.E.2d 81, 83 (1938).

[5] *Worcester Ins. Co. v. Fells Acres Day School, Inc.*, 408 Mass. 393, 404, 558 N.E.2d 958, 967 (1990) (assault); *Veranda Beach Club Ltd. Partnership v. Western Sur. Co.*, 936 F.2d 1364, 1376, 33 Fed. R. Evid. Serv. 809, 20 Fed. R. Serv. 3d 409 (1st Cir. 1991) (applying Mass. law) (forged bonds).

Robocall sent to a consumer by a third party on another entity's behalf under 47 U.S.C. 227(b)). In May of 2013, the FCC reinforced this issue. See In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, --- FCC Rcd. --- (F.C.C. May 9, 2013) (hereinafter "2013 FCC Ruling Order") (clarifying that "a seller … may be vicariously liable under federal common law agency-related principles for violations of either section 227(b) or 227(c) committed by telemarketers that initiate calls to market its products or services."). Where profitable businesses hire others in an effort to hide their role in telemarketing campaigns, the FCC has ruled, in a wide variety of situations, that companies may be held vicariously liable for calls made on their behalf, including when the companies knowingly benefit from the calls. *See In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules,* 28 F.C.C.R. 6574, 6588 (2013) ("FCC Vicarious Liability Order"). As the FCC explained:

> [T]he seller is in the best position to monitor and police TCPA compliance by third-party telemarketers. We thus agree that, consistent with the statute's consumer protection goals, potential seller liability will give the seller appropriate incentives to ensure that their telemarketers comply with our rules. By contrast, allowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Id; see also id. at 6593 ("we see no reason that a seller should not be liable under those provisions for calls made by a third-party telemarketer when it has authorized that telemarketer to market its goods or services. In that circumstance, the seller has the ability, through its authorization, to oversee the conduct of its telemarketers, even if that power to supervise is unexercised")"

Health Insurance Innovations is properly deemed to have initiated all the calls at issue, and is liable under a number of theories even if it did not directly place all the calls, and may be held liable for the calls it made directly, as can its principles, i.e., each of the insurance companies to which it acts as agent or in which Health Insurance Innovations solicits business. Further, based on the facts and information obtained, the conduct was perpetrated in the course of a conspiracy, and in such instance, all involved are joint and severally liable.

The TCPA, 47 U.S.C. 227(b)(3) provides consumers harmed by violations of the TCPA with the right to sue, seeking statutory damages of $500 per violation, and the court can order triple damages for willful or knowing violations, or $1,500 per call. "Willfully or knowingly" requires only the intent to make calls, regardless of any intent to violate the TCPA. *Standard Mutual Ins. Co. v. Lay*, 2012 WL 1377599 (4th Dist. April 20, 2012). Under the TCPA, corporate officers may be held personally liable even though acting on behalf of the corporation. See e.g., *Hoops & Associates, P.C. v. Financial Solutions and Associates, Inc.*, 395 S.W. 3d 594 (Mo. Ct. App. E.D. 2013) reh'g and/or

transfer denied (Mar. 14, 2013) and transfer denied, (Apr. 30, 2013).

Health Insurance Innovations, its agent, and its principles, willfully and knowingly violated the TCPA at least sixty (60) times, i.e., at least thirty (30) calls to my number using ATDS and prerecorded messages (thirty (30) violations), and thirty (30) calls to my number while on the do-not-call registry (thirty (30) violations), all without consent, warranting statutory damages of not less than $30,000 for negligent violations of the TCPA, subject to trebling for willful and knowing violations thereof, or $90,000 under the TCPA alone. It seems abundantly clear that the calls are willful and knowing.

Health Insurance Innovations also violated the MTSA by calling while on the do-not-call registry, and separately, by causing the use of deceptive or "spoofed" numbers that concealed the identity of the initial callers, entitling me to damages of not less than $5,000 per violation. Here there have been several. See G.L. c. 159C § 8.  The MTSA provides separate and independent grounds for jurisdiction over out-of-state or non-resident defendants to an action or proceeding thereunder. See G.L. c. 159C § 13.

Health Insurance Innovations also violated the Massachusetts Code of Regulations promulgated under G.L. c. 159C; 201 CMR 12.02 (6), which states that "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers must institute procedures for honoring the list of Massachusetts consumers who have elected not to receive unsolicited telephonic sales calls in compliance with G.L. c. 159C and 201 CMR 12.00 et seq.," and further, that "[a]ll telephone solicitors engaging in unsolicited telephonic sales calls of Massachusetts consumers shall, at the beginning of such call, disclose [(b) the correct name of the telemarketing company that employs the individual telemarketer who is making the call; [and] (c) the correct name of the ultimate seller whose goods or services are being offered by means of the telemarketing call] … within the first minute of a telephonic sales call …," which Health Insurance Innovation's call center(s) failed to do.

The calls to my cellphone attempting to solicit sales were done in both an unfair and deceptive manner, have been harassing, interfered with sleep, invaded privacy, caused wear and tear, battery usage, and use of paid-for cell services, causing expense adequate to have standing under G.L. c. 93A. In addition, because Health Insurance Innovations violated the Telemarketing Sales Rule 16 CFR 310 et seq. ("TSR") in several respects, Health Insurance Innovations also *per se* violated G.L. c. 93A. Aside from the calls themselves, the conduct of Health Insurance Innovations is grossly unfair and deceptive whereby a court would likely award the full amount of punitive damages allowable under G.L. c. 93A.

Specifically, Health Insurance Innovations violated the TSR by "[f]ailing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; … the name of the seller … on behalf of which a telemarketing call is placed, and the sellers customer service telephone number…" 16 CFR 310.4 (a)(8). As a further example, Health Insurance Innovations

violate the TSR by engaging in a "Pattern of calls." Specifically, under 16 CFR 310.4 (b)(1) of the TSR, "it is an abusive telemarketing act or practice and violation of [the TSR] for a telemarketer to engage in, or for a seller to cause a telemarketer to engage in, the following conduct: (i) causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number, and … (iii) initiating any outbound telephone call to a person when: (A) That person previously has stated that he or she does not with to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered … (B) That person's telephone number is on the 'do-not-call' registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of good or services unless the seller or telemarketer: (1) Can demonstrate that the seller has obtained the express agreement <u>in writing</u>, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature of that person; or (2) Can demonstrate that the seller has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section …"

A violation of the TSR is, according to the Code of Massachusetts Regulations ("CMR"), a per se violation of G.L. c. 93A. The CMR states in relevant part:

> Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of G.L. c. 93A, § 2 if: (1) It is oppressive or otherwise unconscionable in any respect; or … (3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of thus Commonwealth protection; or (4) It violates the Federal Trade Commission Act, the Federal Consumer Credit Protection Act or other Federal consumer protection statutes within the purview of G.L. c. 93A, §2.

940 C.M.R. 3.16

Accordingly, in addition to damages under the TCPA and MTSA, this letter makes demand for damages under G.L. c. 93A in the amount of $10,000, which includes claims subject to 93A, e.g., invasion of privacy, and the time and expense researching and investigating in order to identify the offender and to write this letter and attempt to get the calls to stop, which is compensable under G.L. c. 93A. *See Casavant v. Norwegian Cruise Line, Ltd.*, 76 Mass. App. Ct. 73, 79, 919 N.E.2d 165, 170 (2009). Review granted, 456 Mass. 1106, 925 N.E.2d 864 (2010) (litigation requiring expense of "time, money and effort" constitutes "injury" under G.L. c. 93A).

**DEMAND**

This letter demands Health Insurance Innovations immediately provide its do-not-call policy, immediately stop calling my cellphone, immediately provide the identities and contact information of all those agents or companies acting on behalf of Health Insurance Innovations (if in reality any), who made the spoofed calls, that it provide the identity of each insurance company and product Health Insurance Innovations represents, including whether Health Insurance Innovations represents or sells Blue Cross, Aetna, or United insurance (I am a stockholder in the last two), and that Health Insurance Innovations immediately notice its commercial liability insurer and provide that insurer's name and contact information.[6] In addition, this letter demands:

(i)     Under the TCPA, $90,000 in statutory damages, i.e., $1,500 for each of the <u>not sixty</u> (60) willful and knowing violations thereof, within five days;

(ii)    Under the MTSA, $10,000 in statutory damages as a compromise for the several knowing and willful violation of numerous provisions of the MTSA, within five days;[7] and

(iii)   Under G.L. c. 93A, $10,000 in actual damages, or otherwise a reasonable settlement offer within 30 days.

While an action under the TCPA and MTSA may commence immediately against all parties, including the principle insurers, in the event Health Insurance Innovations wishes to resolve this matter, no action will be brought before the expiration of five (5) days. With respect to the G.L. c. 93A claims, if Health Insurance Innovations believes the demands are unreasonable, it may investigate the facts and the law and counter with a reasonable offer of settlement within, as noted above, 30 days.

## LITIGATION HOLD NOTICE

Health Insurance Innovations, and each of its officers, directors, administrators, employees, subcontractors, shareholders, agents, insurers, and successors and assigns as the case may be, and any other party who may have materials relevant to the claims described in this demand letter (the "Litigation Hold Parties"), are hereby put on notice of litigation hold.

This notice extends to <u>ALL</u> the "Litigation Hold Parties" as defined *supra*. It is the responsibility of the recipient of this notice of litigation hold to properly identify and notice <u>ALL</u> the Litigation Hold Parties and immediately and properly notice them.

---

[6] Failure to timely notice a liability insurer of a claim may breach a policy's notice provision, prejudice the insurer, and relieve the insurer from its obligations to defend or pay the claim on behalf of the insured. In some instances no showing of prejudice is required. *See* Persons, R. and Brownlee, K., *Excess Liability Rights and Duties of Commercial Risk Insureds and Insurers,* § 8:15 (4th Ed. 2002).

[7] Aside from a potential TCPA class action under federal law, there is a strong basis to assert a MTSA class action under Massachusetts law, which would – given the damages available thereunder – subject Health Insurance Innovations and its officers to severe liability.

Any and all materials or records relating to the subject of this demand letter must be retained and preserved, including but not limited to all emails, call logs, audio recordings, contracts with third parties or its agents as well as the audio records of your agents, and any alleged prior express written consent (which would be a fraud if it is claimed to exist). This notice extends to information in Health Insurance Innovation's custody and control relating to any and all claims by any person, company, or entity, accusing it of violating the TCPA, MTSA, or the consumer protection act of any state, or that which may be relevant to this claim. The scope of this litigation hold is broad, as aside from this claim, a class action claim is seriously being contemplated.

Accordingly, the Litigation Hold Parties must not destroy, conceal or alter any paper or electronic files or communications or data generated by and/or stored on any computer or storage media (e.g. hard disks, thumb drives, compact disks, tapes, cloud storage, etc.). Such files shall be considered to include all those devices on which communications involving company business take place, such as but not limited to computer consoles, cell phones, smart phones, tablets, laptops, whether stored on company site or elsewhere. Communications subject to this notice of litigation hold shall include but are not limited to that sent _and_ received via e-mail, chat, texts, blogs, telephone, and via websites, and including communications such as voicemails. Data shall include but are not limited to contracts with agents or third parties, contracts with customers, call records, marketing records, client communications and records, and accounting records, and all complaints, ("Discoverable Data"). Discoverable Data shall include security records as well as past, present, and future audio and/or video surveillance of those areas where Discoverable Data is kept and where access may be gained. Any changes in security policies or practices that would degrade the security of anything that may constitute Discoverable Data will be met with extreme scrutiny and would likely result is severe consequences.

Electronic documents and the storage media on which they reside contain relevant discoverable information beyond what may be bound in printed documents, e.g., author, creation dates, and other metadata. Therefore, even where a paper copy exists, the electronic versions are still subject to this notice of litigation hold.  Moreover, paper documents may contain unique information created after they were printed (e.g., handwriting, signatures, marginalia, drawings, annotations, or highlighting, etc.), and so even while electronic versions of these documents exist, these paper versions are relevant and subject to this notice of litigation hold.

Careful attention should be paid to the proper continued security and preservation of that involving any alleged "prior express written consent" that may be claimed (and which would be a fraud if it is claimed to exist) in any defense to the claims herein, with preservation of evidence to include: (i) authentication, i.e., the means of authenticating the identity of the person allegedly signing; (ii) security, i.e., the binding of the alleged signature to the alleged document and proof of non-alterability after the alleged signature has been fixed thereto: and (iii) record retention, i.e., that involving secure storage and those who have access, and the records and communications created as a result of any prior express written consent.

Although a motion may be brought for an order preserving documents and other data from destruction, your obligation to preserve documents and other data arises independently from any filing of a compliant, motion, or court order. In other words, the filing of a complaint or service thereof is not a prerequisite to compliance with a litigation hold obligation. Specifically, the duty to preserve evidence arises when that party knew or reasonably would have known that such evidence might be relevant to a possible action, and most certainly, as is the case here, at the time a party is on notice. *See, e.g., Linnen v. A.H. Robins Co., Inc.*, 10 Mass. L. Rptr. 189, 1999 WL 462015 (Mass. Super. Ct. 1999) (Brassard, J.); *Townsend v. American Insulated Panel Co., Inc.*, 174 F.R.D. 1, 3, 37 Fed. R. Serv. 3d 1166 (D. Mass. 1997)

Health Insurance Innovations must take every reasonable step to preserve the materials subject to this notice of litigation hold until the final resolution of this matter. This may include, but would not be limited to, an obligation to discontinue all data destruction and backup media recycling policies. With regard to data created subsequent to the date of this letter, relevant evidence should not be destroyed and you are to take the appropriate steps required to avoid destruction of such evidence. It would be wise to seek legal advice to ensure your compliance with this notice of litigation hold.

## WARNING NOTICE

Should it be discovered that Health Insurance Innovations failed to comply with the above notice of litigation hold, such would have severe consequences. With respect to court proceedings against Health Insurance Innovations, the court may award sanctions up to default judgment. See *Fletcher v. Dorchester Mut. Ins. Co.*, 437 Mass. 544, 551, 773 N.E.2d 420, 426 (2002) (saying that "if spoliation occurs in violation of a discovery order, various sanctions, including dismissal or judgment by default, may be imposed for that violation."); *Keene v. Brigham and Women's Hosp., Inc.*, 439 Mass. 223, 234-37, 786 N.E.2d 824, 833-35 (2003) (saying that in "the spoliation context (like in the discovery context), a judge has broad discretion to impose a variety of sanctions against the defendant for the breach of its statutory duty to retain the plaintiff's missing records … default judgment is committed to the sound discretion of the judge, with such sanction of default judgment being available upon a finding of willfulness or bad faith.)

Should Health Insurance Innovations fail to respond within five days to the TCPA and MTSA demands, notice will be made to all relevant parties, and an action will be brought against all parties seeking the all statutory damages and available remedies.

Should Health Insurance Innovations fail to respond within 30 days to this G.L. c. 93A demand, a an action will be brought against Health Insurance Innovations and officers in their individual personal capacities seeking, *inter alia*, treble actual damages as to each officer. In addition, court costs, and attorney fees will be sought as applicable.

Be advised, under G.L. c. 93A, corporate officers may be personally liable without regard to the corporate vale. See *Nader v. Citron*, 372 Mass. 96, 360 N.E.2d 870

(1977) (abrogated on other grounds by, *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 888 N.E.2d 879 (2008)). Specifically, "corporate officers can be held personally liable for participating in unfair and deceptive business practices." *Bolen v. Paragon Plastics*, Inc., 754 F. Supp. 221, 228 (D. Mass. 1990), citing *Nader v. Citron*, 372 Mass. 96, 103, 360 N.E.2d 870, 875 (1977) (abrogated on other grounds by, *Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 888 N.E.2d 879 (2008)) and *Manning v. Zuckerman*, 388 Mass. 8, 10, 444 N.E.2d 1262, 1263 (1983); See also, *Hoch v. Porrazzo*, 2005 Mass. App. Div. 61, 62, 2005 WL 1383340 (2005) and cases cited; *Shaw v. Yellin*, 2008 Mass. App. Div. 141, 2008 WL 2627637 (2008), decision aff'd, 75 Mass. App. Ct. 1103, 912 N.E.2d 1040 (2009) (personal liability of corporation's shareholders and officers for unfair and deceptive acts under G.L. c. 93A); *Musi v. Blair*, 2011 Mass. App. Div. 51, 2011 WL 704745 (2011) (liability under G.L. c. 93A for one who acted on behalf of company and played a key role in its operation); *Adelphia Agios Demetrios*, *LLC v. Arista Development*, LLC, 2013 WL 1622675 (D. Mass. 2013) (case involves G.L. c. 93A claims against officer of an LLC); *George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129 (D. Mass. 1998); See also *Shaw v. Yellin*, 2008 Mass. App. Div. 141, 2008 WL 2627637 (2008), decision aff'd, 75 Mass. App. Ct. 1103, 912 N.E.2d 1040 (2009)

Health Insurance Innovation's principle officers may be liable for claims under G.L. c. 93A, as well as under the TCPA and MTSA, whereby claims against the principle officers may be brought, these officers are also subject to personal jurisdiction in Massachusetts under the explicit statutory provisions of the MTSA, as well as the provisions of the Massachusetts Long Arm Statute, G.L c. 223A. Accordingly, if Health Insurance Innovations fails to respond favorably and it becomes necessary to file an action, a complaint will be filed naming Health Insurance Innovation's officers in their personal capacities.

Please <u>do not</u> sent paper correspondence to either of my Martha's Vineyard Residences. Please direct paper correspondences, if any, to my all-season mailing address at 103 Prospect Street, Wakefield MA 01880, unless otherwise noticed.

Very Truly Yours,

Robert A. Doane

SERVED
ON 3/17/22    11:50
APS# 48582 / CPS# 08-598559 - KJS

**Commonwealth of Massachusetts**

MIDDLESEX SS

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 22S1CV00215

Robert A. Deane , PLAINTIFF(S).

v.

Benefytt Technologies Inc et al DEFENDANT(S)



**SUMMONS**

THIS SUMMONS IS DIRECTED TO Benefytt Technologies, T (Defendant's name)

**You are being sued.**  The Plaintiff(s) named above has started a lawsuit against you.  A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Middlesex Superior Court.  **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1.  **You must respond to this lawsuit in writing within 20 days.**  If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint.  You will also lose the opportunity to tell your side of the story.  You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff.  **If you need more time to respond, you may request an extension of time in writing from the Court.**

2.  How to Respond.  To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented).  You can do this by:
   a.  Filing your signed original response with the Clerk's Office for Civil Business, Middlesex Court, 200 Trade Center, Woburn, MA — (address), by mail or in person, **AND**
   b.  Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: Richard B. Reiling, Esq. 63 Atlantic Ave, 3rd Fl, Boston, MA 02110

3.  What to include in your response.  An "Answer" is one type of response to a Complaint.  Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.  Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court.  If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer.  Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit.  If you want to have your case heard by a jury, you must specifically request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer.  You can also respond to a Complaint by filing a "Motion to Dismiss," if you believe that the complaint is legally invalid or legally insufficient.  A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.**  If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4.   **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.   **Required Information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Heidi Brieger, Chief Justice on _____, 20 ___ .

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20 ___ , I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____ , 20 _____        Signature: _____

**N.B.**   TO PROCESS SERVER:

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

_____

, 20 ___

3/17/22   11:50 am
APS# 46582 / CPS# 03-398559 - KJS

## Commonwealth of Massachusetts

MIDDLESEX, SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2281CV00215

Robert A. Deane , PLAINTIFF(S),

v.

Michael Devries et al , DEFENDANT(S)



### SUMMONS

THIS SUMMONS IS DIRECTED TO Michael Devries . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Middlesex Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1   **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2   **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a   Filing your signed original response with the Clerk's Office for Civil Business, Middlesex Court, 200 Trade Center (address), by mail or in person, **AND** Woburn, MA

   b   Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: Richard J. Riley, ESQ, 163 Atlantic Ave, 3rd FL, Boston, MA 02110.

3   **What to include in your response.** An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a "**Motion to Dismiss**," if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4     **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic
information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

5.     **Required information on all filings:** The "civil docket number" appearing at the top of this notice is the
case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss.
You should refer to yourself as the "Defendant."

Witness Hon. Heidi Brieger, Chief Justice on _____ , 20 ____ .

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the
summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

     I hereby certify that on _____ , 20 ___ , I served a copy of this summons,
together with a copy of the complaint in this action, on the defendant named in this summons, in the
following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

_____

Dated: _____ , 20 _____     Signature: _____

**N.B.**     **TO PROCESS SERVER:**

     PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH
ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

| |
|---|
| , 20 ___ |

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2281CV00215 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| | |
|---|---|
| CASE NAME: Robert A Doane vs. Benefytt Technologies, Inc. et al | Michael A. Sullivan, Clerk of Court Middlesex County |
| TO: File Copy | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |

### TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                      **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 04/14/2022 | |
| Response to the complaint filed (also see MRCP 12) | | 05/16/2022 | |
| All motions under MRCP 12, 19, and 20 | 05/16/2022 | 06/13/2022 | 07/13/2022 |
| All motions under MRCP 15 | 05/16/2022 | 06/13/2022 | 07/13/2022 |
| All discovery requests and depositions served and non-expert depositions completed | 11/10/2022 | | |
| All motions under MRCP 56 | 12/12/2022 | 01/09/2023 | |
| Final pre-trial conference held and/or firm trial date set | | | 05/09/2023 |
| Case shall be resolved and judgment shall issue by | | | 01/15/2024 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 01/14/2022 | ASSISTANT CLERK Debra J Newman | PHONE |
|---|---|---|

Date/Time Printed: 01-14-2022 11:12:21                                             SCV026, 08/2018

3                                                                          B

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                                    SUPERIOR COURT DIVISION

| | |
|---|---|
| ROBERT A. DOANE, ) | DOCKET NO. 2281CV00215 |
| ) | |
| Plaintiff ) | |
| ) | **RECEIVED** |
| v. ) | 1/19/2022 |
| ) | |
| BENEFYTT TECHNOLOGIES, INC., et al. ) | |
| ) | |
| Defendants ) | |

### MOTION FOR APPOINTMENT OF A SPECIAL PROCESS SERVER

Pursuant to Mass. R. Civ. P. 4(c), Plaintiff **ROBERT A DOANE,** hereby moves for an

order appointing James Kady, KD Process, 2957 Capital Park Drive, Ste. 7, Tallahassee, FL

32301 or his employees or agents, as special process server in the above-captioned action. The

person to be appointed special process server is experienced in the service of process, and is 18

years of age or older, and is not a party to this action.

Dated:  January 19, 2022

Attest: 1/21/22   Motion Allowed

$\int$Arrove   (Deputy Assistant Clerk

J.)

IC

Respectfully Submitted,

Robert A. Doane,

By his Attorneys


/s/RICHARD B. REILING
RICHARD B. REILING BBO#629203
BOTTONE | REILING
63 Atlantic Street, 3rd FL
Boston, MA 02110
Phone:     (617) 412-4291
Facsimile: (617) 412-4406
Email:     richard@bottonereiling.com

And


/S/DAVID PASTOR
DAVID PASTOR BBO # 391000
PASTOR LAW OFFICE, LLP
63 Atlantic Avenue, 3d Floor
Boston, MA 02110
Telephone: 617.742.9700
Email: dpastor@pastorlawoffice.com

*Co-Counsel for Plaintiff*