UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT A. DOANE<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>BENEFYTT TECHNOLOGIES, INC. f/k/a<br>HEALTH INSURANCE INNOVATIONS, INC.;<br>GAVIN SOUTHWELL; MICHAEL DEVRIES;<br>and JOHN and/or JANE DOE and/or XYZ<br>COMPANY,<br><br>　　　　　　　Defendants. | C.A. No. 22-10510 |

**MEMORANDUM IN SUPPORT OF BENEFYTT TECHNOLOGIES, INC.'S
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Benefytt Technologies, Inc. f/k/a Health Insurance Innovations, Inc.
("Benefytt"), submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff
Robert A. Doane's Complaint. All of the counts in the Complaint fail as a matter of law and must
be dismissed pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

Plaintiff alleges that he received 30 telemarketing calls soliciting the sale of insurance-
related products and services using an automatic telephone dialing system ("ATDS") and
prerecorded messages without his consent and while his number was on the Do Not Call registry.
The Complaint asserts six causes of action: Count I–Violations of the Telephone Consumer
Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A); Count II–Violations of TCPA § 227(c)(1)
and (4); Count III–Violations of the Massachusetts Telemarketing Solicitation Act; Count IV–
Invasion of Privacy by Intrusion upon Seclusion; Count V–Violations of the Massachusetts
Consumer Protection Act, G.L. c. 93A; and Count VI–Conspiracy.[1] All six counts should be

---

[1] Count VII is not asserted against Benefytt, Gavin Southwell, or Michael Devries. Because Counts I through VI
should be dismissed with prejudice, Count VII against unnamed individuals and companies should be dismissed as
well.

dismissed with prejudice.

The Counts III, IV and VI alleging violations of the MTSA, Invasion of Privacy, and Conspiracy are barred by the three-year statutes of limitations.

All of the Counts should be dismissed because the Complaint fails to plead the requisite elements of the causes of action asserted, and the facts that are alleged contradict Plaintiff's conclusory allegations. Plaintiff does not allege that Benefytt made any of the offending phone calls. Therefore, to hold Benefytt and the other Defendants liable, Plaintiff must allege facts that would support a plausible inference that the actual caller, National Health Enrollment Center ("NHEC"), was acting as Benefytt's common law agent. As explained below, Plaintiff fails to allege any facts that could conceivably support any theory of common law agency.

Count II asserting claims based on alleged violations of the regulations implementing the TCPA should be dismissed because Plaintiff lacks standing to assert the claims because he has not suffered any injury. The Complaint also fails to allege facts showing he received more than one call from or on behalf of the insurance broker, Perez Health Advisors, or from Benefytt.

Finally, Count VI does not allege the factual predicates to establish the elements of a conspiracy claim. The Complaint should be dismissed with prejudice.

**Allegations**

Plaintiff alleges that he received 30 phone calls from different "spoofed" phone numbers prior to August 3, 2018. Compl. at ¶ 49. He does not allege the contents of the calls beyond that the calls were "attempting to solicit sales of insurance-related products and services." *Id*. Plaintiff does not allege that the calls indicated what type of insurance was being offered, the name of the company making the calls, or the names of any insurance companies or insurance agencies.

Plaintiff alleges that six of the calls came from 781-680-1720. Once again, Plaintiff does not allege who made those calls or what was said in the prerecorded messages or by any live

2

agents. *Id.* at ¶ 52.

After receiving a number of calls from different phone numbers attempting to solicit insurance-related products or services, including from 781-680-1720, Plaintiff alleges that he answered one or more calls from an unidentified phone number or numbers on unspecified date(s) and tried to identify who was calling. *Id.* at ¶ 52. The callers informed Plaintiff that they were from NHEC. Plaintiff does not allege that any insurance company or broker was identified during the call(s), nor does Plaintiff allege what type of insurance was offered, if any. *Id.*

Plaintiff alleges that on June 5, 2018, he received a call, again, from an unidentified telephone number. As with the other calls, Plaintiff fails to allege the content of the prerecorded message. Plaintiff spoke with "Alex" from NHEC who said he was calling in response to a request for health insurance. *Id.* at ¶¶ 53-54. In response to a question about his address, Plaintiff stated that he resided in both Massachusetts and Florida. Only after learning that Plaintiff lived in Florida did Alex decide to transfer Plaintiff to a Florida insurance broker, Trisha Perez of Perez Health Advisors, Inc. *See id.* at ¶¶ 55, 57, 67, n.4, Ex. 4, Ex. 5 at 3. Perez was licensed to sell insurance in Florida. *See* Exhibit A, Declaration of Brian I. Hays, Ex. 1.[2] Because she was not licensed to sell insurance in Massachusetts, Perez required Plaintiff to use his Florida address for the policy. After speaking with Perez and agreeing to purchase a policy in Florida, Plaintiff alleges he received an email with an application to apply for an insurance policy in Florida that cc'd Benefytt. *See Compl.* at ¶¶ 69, Ex. 3.

Plaintiff alleges he received three more calls from Perez Health Advisors following up to

---

[2] The Court may take judicial notice of Perez' insurance license records printed from the Florida Department of Financial Services webpage. Courts routinely take judicial notice of license records. *See MetLife Home Loans, LLC v. Fidelity Nat'l Title Group, Inc.*, No.: 2:20-cv-01798-GMN-VCF, 2021 WL 4096540, n.1 (D. Nev. Sept. 8, 2021) (license information from department of insurance website); *Cavalry Chapel of Bangor v. Mills*, 542 F. Supp. 3d, 24, 27-28 & n.4 (D. Me. 2021) (matters appearing on an official government website, which are not subject to reasonable dispute); *Cobb v. Enhanced Recovery Co., LLC*, No. 3:17-CV-1629 (VLB), 2019 WL 1115755, *1 (D. Conn. Mar. 11, 2019) (NMLS online records).

complete the purchase of insurance he began during the June 5, 2018 call. *Id.* at ¶ 73-74.

The facts alleged in the complaint establish that NHEC is a lead generator. NHEC makes calls to identify potential leads that it then sells to its clients. *See id.* at ¶¶ 52-54. As Plaintiff's Complaint makes clear, NHEC's calls are not made on behalf of any particular client. *See id.* at ¶¶ 53-67, 74-77, 81-83, 86. Indeed, NHEC does not even mention its clients by name in the prerecorded message or during the call. *Id.* at ¶ 86 ("At no time did any of the spoofed callers identify themselves accurately or ***as calling on behalf of the Defendants***.") (emphasis added). Rather, only after conducting a live interview to obtain information about the consumer, NHEC itself determines whether a person would qualify as a potential sales lead for any particular NHEC client. *See id.* at ¶¶ 55-60. In this case, Plaintiff told NHEC that he lived in both Massachusetts and Florida. NHEC then decided whether to send the lead to one of its Massachusetts or Florida insurance broker clients. *Id.*

**Argument**

## I.    The Applicable Legal Standard.

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs." *Gargano v. Liberty Int'l Underwriters, Inc.*, 572 F.3d 45, 48 (1st Cir. 2009). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While "[t]he plausibility standard is not akin to a 'probability requirement,'" it demands "more than a sheer possibility that a defendant has

4

acted unlawfully." *Eldredge v. Town of Falmouth, MA*, 662 F.3d 100, 104 (1st Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

The pleading standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *accord Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Unless the alleged facts push a claim 'across the line from conceivable to plausible,' the complaint is subject to dismissal." *Eldredge*, 662 F.3d at 104 (quoting *Iqbal*, 556 U.S. at 680). A complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

## II.    Counts III, IV, and VI Are Barred By the Three-Year Limitation Periods.

Plaintiffs' MTSA, Invasion of Privacy, and Conspiracy Counts are barred by the applicable statutes of limitations. Claims for violations of the MTSA must be brought within three years. M.G.L.A. ch. 159C § 10. Claims for invasion of privacy under M.G.L.A. ch. 214, § 1B and civil conspiracy are governed by the three-year limitation period in M.G.L.A. ch. 260 § 2A. *See Finney v. Madico, Inc.*, 674 N.E.2d 655, 659 (Mass. App. Ct. 1997) (privacy); *Gray v. City of Revere*, No. 16-10580-FDS, 2016 WL 3512133, at *4 (D. Mass. June 22, 2016) (conspiracy).

A statute of limitations defense may be raised in a Rule 12(b)(6) motion when the facts establishing the defense are clear on the face of the complaint. Where the dates included in a complaint show that the limitations period has been exceeded, dismissal is appropriate. *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008). Here, the Complaint is based on calls Plaintiff allegedly received prior to August 4, 2018. Compl. ¶ 49. The Complaint was filed on January 14, 2022, more than three years and five months after August 3, 2018.

5

Because Plaintiff waited too long to assert his claims, Counts III, IV and VI should be dismissed with prejudice.

## III. All Six Counts Should Be Dismissed Because Plaintiff Failed to Allege Facts Supporting Any Theory of Common Law Agency.

Because none of the Defendants made the calls to Plaintiff, Plaintiff must allege facts that would support holding Defendants vicariously liable for NHEC's calls based on some theory of common law agency. To support a claim based on agency, a complaint must contain factual allegations regarding an agency relationship, not just conclusory statements. *Driscoll v. McCann*, 505 F. Supp. 3d 32, 37 (D. Mass. 2020). When a plaintiff attempts to rely on conclusory statements to establish an agency relationship, the complaint should be dismissed. *Smith v. Liberty Mut. Ins. Co.*, No. 1:20-cv-11583-ADB, 2021 WL 1581017, at *5 (D. Mass. Apr. 22, 2021); *Smith v. State Farm*, No. 13 C 2018, 2013 WL 5346430, at *3 (N.D. Ill. Sept. 23, 2013). Here, Plaintiff fails to allege sufficient facts to support any form of direct or vicarious liability against any of the Defendants. Indeed, Plaintiff's untenable and unbounded claim that Defendants are liable for every call made by NHEC regardless of whether NHEC sold the lead to one of Benefytt's competitors or to a broker that had any relationship with Benefytt amply illustrates why Plaintiff cannot allege an agency relationship between NHEC and Benefytt.

### A. NHEC was not calling on behalf of anyone but itself.

The facts alleged in the Complaint demonstrate that NHEC was calling on its own behalf and not on behalf of any specific insurance broker or company. The allegations establish that NHEC is not a traditional telemarketer. NHEC is a lead generator making calls to identify potential leads that it then sells to its customers. (*See* Compl. ¶¶ 55-57.) Lead generators contact a large number of consumers to screen them for information for the lead generator's customers. Leads who meet the criteria set by NHEC's customers are then sold to that customer.

Plaintiff admits that NHEC did not mention any insurance brokers or companies by name

6

in its prerecorded messages or during live conversations with NHEC operators. *Id.* at ¶ 52 (Plaintiff "made attempts to identify those responsible, and on each attempt, the agent would identify themselves as 'National Health Enrollment Center.'"); ¶ 86 ("At no time did any of the spoofed callers identify themselves accurately or ***as calling on behalf of the Defendants***."). It was only after NHEC screened Plaintiff by asking him questions and for his address that NHEC selected one of its customers to receive the lead. *Id.* at ¶¶ 55-58. Because the Complaint establishes that NHEC was calling on its own behalf to generate leads to sell to its customers and not as a common law agent on behalf of any of its clients, the Complaint should be dismissed in its entirety and with prejudice.

**B.    Plaintiff's agency allegations against Benefytt are not plausible.**

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. The totality of Plaintiff's agency allegations are found in paragraphs 95 to 101. The allegations in paragraphs 95, 96, 99, 100, and 101 contain nothing more than labels, legal conclusions, and a formulaic recitation of the elements of agency that this Court should not accept as true absent factual support. *Iqbal*, 556 U.S. at 678.

In paragraphs 97 and 98, Plaintiff alleges that Benefytt contracted with a Florida insurance broker Trisha Perez of Perez Health Advisors authorizing her to contract with NHEC to conduct a marketing campaign to Massachusetts residents. Compl. at ¶ 98. Benefytt submits that Plaintiff's agency theories do not rise to the level of conceivable, much less plausible. *Iqbal*, 556 U.S. at 678.

An insurance producer licensed in Florida who is not licensed to sell insurance in Massachusetts cannot sell insurance to Massachusetts residents. *See* M.G.L.A. ch.175 § 162I ("A person shall not sell, solicit or negotiate insurance in the commonwealth for any class or classes of insurance unless the person is licensed for that line of authority in accordance with sections

162H to 162X, inclusive."). Plaintiff alleges that when he provided Perez with a Massachusetts address, Perez stated that "she required a Florida address" to issue a policy. Compl. at ¶ 61. The insurance application reflects Plaintiff's Florida address. Compl., Ex. 3. It is simply not plausible that a Florida insurance broker would contract with or conspire with NHEC to use a random or sequential number generator to target Massachusetts consumers hoping to reach someone with a Massachusetts telephone number but who lives in Florida. The facts alleged clearly show that NHEC was an independent contractor casting a wide net to generate leads that it could sell to its various customers after screening the lead. If Plaintiff has told NHEC that he lived in Massachusetts and not mentioned his condo in Florida, NHEC would have sold the lead to a Massachusetts broker and this lawsuit would never have been filed.

**C.    Plaintiff alleges no facts to suggest that Benefytt can be held vicariously liable for any calls based on a formal agency relationship with NHEC.**

According to Plaintiff, Benefytt was NHEC's "principal" because an independent insurance broker who had a contract with Benefytt purchased leads from NHEC. An agency relationship is a fiduciary relationship that only arises when the alleged agent "act[s] on the principal's behalf and subject to the principal's control." *Fine v. Sovereign Bank*, 634 F. Supp. 2d 126, 137 (D. Mass. 2008) (quoting Rest. (3d) of Agency § 1.01). Courts have long recognized that parties to a contract are not each other's fiduciaries, and therefore a commercial contract does not create an agency relationship. *McDermet v. DirecTV, LLC*, No. 19-11322-FDS, 2021 WL 217336, at *25 (D. Mass. Jan. 21, 2021) (finding that defendants contracting with retailers for various services does not by itself establish agency); *see also Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992) (same). Rather, the test for agency is whether the principal has the right to control the agent's actions, in particular the power to give interim instructions. *McDermet*, 2021 WL 217336, at *19. The Complaint does not allege

any facts to show that Benefytt or Perez Health Advisors controlled NHEC's conduct. Plaintiff's conclusory allegations of control are not supported by any facts. *See* Compl. at ¶ 96.

In *Smith v. Liberty Mutual*, Judge Burroughs dismissed a TCPA under similar facts. Smith alleged that she received a number of telemarketing calls from Vehicle Insurance Services. Smith provided her email address to the agent. Within 30 minutes, she received an email from Liberty Mutual about obtaining an insurance quote. *Id.* at *1. The Court granted Liberty Mutual's motion to dismiss finding that the Complaint did not contain factual allegations of control. *Id.* at *5. Like the Plaintiff here, Smith did not allege that Liberty Mutual directed the callers to place calls to Smith, that anyone on the calls said they were calling on behalf of Liberty Mutual, or that there was any relationship between Liberty Mutual and Vehicle Insurance Services. *Id.* The Court concluded: "In sum, none of the factual allegations about the two phone calls 'tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control.'" *Id.* (quoting *Aaronson v. CHW Grp., Inc.*, No. 18-cv-01533, 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019)). *See also Melito v. American Eagle Outfitters, Inc.*, No. 2015 Wl 7736547, at *7 (S.D.N.Y. Nov. 30, 2015) (dismissing complaint finding: "Significantly absent from Plaintiffs' allegations, however, is any factual content regarding the relationship between Experian and Archer. Plaintiffs seem to suggest that the allegations that Experian 'had the right to control the sending of the texts' and 'in fact controlled and even scheduled the sending of each segment of the texts' are sufficient to plead Experian's vicarious liability for Archer's actions.").

**D.    Plaintiff has not alleged facts that suggest that NHEC acted with Benefytt's apparent authority.**

In paragraph 100, Plaintiff alleges that the calls he received from NHEC "were within the scope of the agent telemarketers' actual or, in the alternative, apparent authority of the Defendants." Compl. at ¶ 100. That is the totality of the allegations in support of Plaintiff's

9

apparent authority theory.

Apparent authority is only created where (1) the ***principal*** makes a "manifestation" to a third party, (2) the third party has a "reasonable" belief that an actor has the principal's authority to act, and (3) the third party reasonably relied on those statements or actions. *Moreau v. Local Union No. 247, Int'l Broth. of Firemen & Oilers, AFL-CIO*, 851 F.2d 516, 518 (1st Cir. 1988); *Smith*, 2021 WL 1581017, at *4; Rest. (3d) Agency § 2.03. The Complaint does not meet any of the three requirements.

The Complaint does not allege that Benefytt said or did anything to give Plaintiff a reasonable belief that NHEC was calling on Benefytt's behalf or that the independent insurance broker had authority to hire NHEC on Benefytt's behalf. Plaintiff did not learn of any connection between the June 5, 2018 call and Benefytt until after he agreed to purchase a policy through Perez Health Advisors. Compl. at ¶¶ 66-68. Plaintiff only learned of Benefytt's existence when he received an email from Benefytt with an application for LifeShield National Insurance Co. and Federal Insurance Company. Compl., Ex. 3.

Because Plaintiff did not learn about Benefytt's existence until after the calls, Plaintiff cannot allege that he believed NHEC was acting with Benefytt's authority or that he relied on any statements or actions by Benefytt when he received the calls. A principal is not liable under an apparent agency theory where the alleged harm took place before the principal allegedly communicated the agent's authority. *See Stinespring, III v. Fidelity Nat'l Fin., Inc.*, No. 12 C 5866, 2013 WL 1626203, at *6 (N.D. Ill. Apr. 15, 2013) (no vicarious liability where the plaintiffs' injuries were the result of acts that took place before the principal allegedly communicated the agent's authority); *Cornelius v. Bodybuilding.com, LLC*, No. 1:10-cv-027-BLW, 2011 WL 2160358, at *6 (D. Idaho Jun. 1, 2011) (holding that a defendant website operator was not vicariously liable for disparaging comments posted by its forum moderators, because any apparent

authority conferred on the moderators was unrelated to the misconduct at issue). "[T]o impose liability on [Benefytt] based on an apparent authority theory here would create the absolute result of imposing liability for the same telephone call on numerous clients of a lead generator, including competitors of one another." *Smith v. State Farm*, 2013 WL 5346430, at *5. Here, NHEC completed the alleged statutory violations and invasion of privacy when it called Plaintiff for the purposes of screening him as a qualifying lead for NHEC to sell. Indeed, Plaintiff admits that he did not know who was placing the calls when he listened to the prerecorded message or spoke with NHEC's employees. Compl. at ¶¶ 51, 52, 86. By the time NHEC transferred the lead to Perez Health Advisors (who also did not mention any of the Defendants), the alleged harm had already been done. Given these admissions, Plaintiff cannot allege apparent authority.

**E.      Plaintiff has not alleged facts that could support vicarious liability under a ratification theory.**

Plaintiff cannot hold any of the Defendants liable based on a ratification theory because, as shown above, he has not alleged facts that could suggest that NHEC was Benefytt's actual or apparent agent with respect to the telephone calls. A principal cannot "ratify" an alleged agent's conduct – thereby subjecting itself to full liability for wrongful conduct – if there was no actual or implied agency relationship in the first place. *See Canney v. City of Chelsea*, 925 F. Supp. 58 n.8 (D. Mass. 1996) (finding ratification theory without merit since court found there was no principal-agent relationship to begin with and a purported principal "cannot ratify an act which the principal could not have authorized in the first place"); *Kaye v. Grossman*, No. 97 Civ. 8679(JSR), 1999 WL 33465, at *2 n.1 (S.D.N.Y. Jan. 27, 1999) (ratification "presupposes an agency relationship; it does not create one where none otherwise existed"); Rest. (3d) of Agency § 4.03 cmt. b ("When an actor is not an agent and does not purport to be one, the agency-law doctrine of ratification is not a basis [for liability]."). For the reasons set forth above in Parts III.C and D, Plaintiff's ratification claim cannot succeed. *See, e.g.*, *CNE Direct, Inc. v. BlackBerry Corp.*, No. 14-10149-

11

FDS, 2015 WL 4750847, at *32-33 (D. Mass. Aug. 10, 2015) (defendant could not be said to have ratified third-party's conduct where plaintiff could not establish that defendant and third party had a principal-agent relationship).

Plaintiff's ratification theory also fails because ratification must be based on "full knowledge of all material facts." *Smith v. Liberty Mut. Ins. Co.*, 2021 WL 1581017, at *6; *McDermet*, 2021 WL 217336, at *29 (no ratification where defendant unaware of telemarketing). *See also, Booker v. United American Ins. Co.*, 700 So.2d 1333, 1337 (1997) (insurance company had not ratified the misconduct of soliciting agent's unauthorized subagent by issuing an insurance policy based on fraudulently procured application; the company was "incapable of knowingly ratifying [the subagent's conduct], of which it was unaware"). A plaintiff must "put forth some specific facts pointing to knowledge . . . in order to nudge [her] claim 'across the line from conceivable to plausible.'" *Winchester v. Marketti*, No. 11 CV 9224, 2012 WL 2076375, at *6 (N.D. Ill. Jun. 8, 2012) (quoting *Twombly*, 550 U.S. at 547).

Here, Plaintiff has not alleged that any of the Defendants knew that Perez Health Advisors had contracted with NHEC to purchase leads. There is no factual allegation that NHEC or any other caller identified Benefytt. Plaintiff does not allege that Benefytt was aware that NHEC was making calls, much less that any of the Defendants knew that NHEC was using an ATDS and prerecorded messages to call Massachusetts phone numbers to provide leads to a Florida insurance broker. *See Smith v. Liberty Mut. Ins. Co.*, 2021 WL 1581017, at *6.

## IV.    Count II Fails to State a Cause of Action for Violations of § 64.1200(d).

Section 227(c)(5) of the TCPA creates a private right of action for any person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the TCPA's implementing regulations. In Count II, Plaintiff alleges that Benefytt violated 47 C.F.R. § 64.1200(d) by failing to have a written Do Not Call policy available

to the public upon request, by continuing to call after Plaintiff asked for the calls to stop, and by calling his phone number while it was on the Do Not Call Registry. In addition to Plaintiff's failure to allege facts supporting any agency theory, Count II should also be dismissed because Plaintiff fails to allege any injury resulting from these alleged violations and fails to allege facts that would support his claims.

### A.   Plaintiff fails to allege any injury to support standing to pursue claim for violation of § 64.1200(d)(1).

Section 64.1200(d)(1) and (3) require any person initiating telemarketing calls to have a written policy that is available on request and to honor any requests for the calls to stop. Plaintiff asserts that Benefytt did not maintain a written policy and did not honor his request that the calls stop. Plaintiff lacks standing to assert either claim.

First, because Plaintiff alleges that NHEC initiated some or all of the calls he received, Benefytt had no obligation to maintain a written Do Not Call policy or to provide the policy upon request. Even if Benefytt had such a duty, the failure to maintain a written policy or send a copy to Plaintiff is the type of "bare procedural violation, divorced from any concrete harm" the United Supreme Court held in *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), did not satisfy standing. Plaintiff fails to allege any injury Plaintiff suffered as a result of any alleged violation of § 64.1200(d). *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) ( "If the injury asserted [] is just that DIRECTV violated regulations under the TCPA by engaging in telemarketing without maintaining an internal do-not-call list, that claim runs smack into the *Spokeo* problem of asserting a "bare procedural harm" untethered to a concrete and particularized injury in fact.").

Second, the first time Plaintiff asked for a copy of the Do Not Call policy and to be placed on Benefytt's internal Do Not Call list was in his August 3, 2018 demand letter. Comp. at ¶ 89-90. Plaintiff does not allege that he received any calls from Benefytt or about Benefytt after August 3,

2018. Because Plaintiff's Do Not Call request has been honored, Plaintiff lacks standing to assert a claim under this provision. *See Id.* at 1271 (consumer who did not request to be placed on internal do-not-call list lacked standing to maintain TCPA claim based on allegations that provider failed to institute appropriate procedures to maintain internal list).

      **B.**    **Plaintiff fails to allege he received more than one telephone solicitation traceable to Perez Health Advisors.**

For the reasons set forth above, none of the telephone solicitations was initiated by or on behalf of Benefytt or Perez Health Advisors. While Plaintiff alleges that he received more than one telephone solicitation from NHEC, Plaintiff only alleges that he received a single telephone solicitation that involved Perez Health Advisors.

Plaintiff has not alleged any facts to support the inference that any of the other calls Plaintiff allegedly received from NHEC would have been transferred to Perez Health Advisors. If Plaintiff had told NHEC that he lived in Massachusetts alone during the June 5 call, NHEC would have sold the lead to a broker licensed to sell insurance in Massachusetts, not to Perez Health Advisors in Florida. Compl. at ¶¶ 55, 57, 61 (Perez "required a Florida address."). Plaintiff does not allege that he made it past NHEC to an insurance broker during any subsequent call.

The three follow-up calls Plaintiff received from Perez Health Advisors did not involve an ATDS or prerecorded messages. They were all placed by live agents to follow-up to complete the transaction initiated by Plaintiff on June 5, 2018. Compl. at ¶¶ 73-75. Section 64.1200(c)(2) only prohibits telephone solicitations to phone numbers on the Do Not Call registry. 47 C.F.R. § 64.1200(c)(2). The definition of "telephone solicitations" excludes calls to any person with whom the caller has an established business relationship. 47 C.F.R. § 64.1200(f)(15)(ii). Because Plaintiff agreed to purchase an insurance policy during the June 5 call, Perez Health Advisors had an established business relationship with Plaintiff for the three calls. 47 C.F.R. § 64.1200(f)(5).

**V.      Plaintiff Cannot State a Claim for Civil Conspiracy (Count VI).**

Massachusetts courts recognize two different theories of civil conspiracy. First, there is a "very limited cause of action" for a coercive type of civil conspiracy. *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1563 (1st Cir. 1994). The second type of civil conspiracy is similar to common law joint liability in tort. *Id*. at 1564. The Complaint fails to allege either.

To establish a claim for the coercive type of conspiracy, Plaintiff must allege that Defendants acting in unison and had some peculiar power of coercion over Plaintiff that they would not have had if acting independently. To establish the second element, Plaintiff must show that the combined acts of the Defendants, Perez Health Advisors, and NHEC brought about a harm that no one of them could have brought about acting alone. *Koppel v. Moses*, No. 20-11479-LTS, 2020 WL 6292871, at *9 (D. Mass. Oct. 27, 2020). The harm Plaintiff alleges is that he received 30 telemarketing calls that played a prerecorded message. The same harm could have been accomplished by Perez Health or Benefytt acting alone calling Plaintiff.

For the second type of conspiracy claim, Plaintiff must show "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another." *Therrien v. Hamilton*, 849 F. Supp. 2d 110, 115 (D. Mass. 1994). Plaintiff's conspiracy claims are limited to paragraph 167 of the Complaint. The Complaint does not allege any agreement among Defendants, Perez Health Advisors, and NHEC to make telemarketing calls to Massachusetts phone numbers using an ATDS or prerecorded messages without consent. Instead, the Complaint alleges that Perez Health Advisors agreed to buy leads of Florida residents from NHEC. Compl. at ¶¶ 55, 57, 61. Plaintiff then alleges that after agreeing to purchase an insurance policy from Federal Insurance Company at his Florida address, he received an application via email that came from Benefytt. Compl. at ¶ 59, 68-69, Ex. 2, Ex. 3. NHEC only

sold Plaintiff as a lead to Perez because Plaintiff told NHEC that Plaintiff lived in Florida. Compl.

at ¶¶ 55, 57. Perez said she could only write the policy if Plaintiff lived in Florida.

## Conclusion

For the reasons set forth above, Defendant Benefytt Technologies, Inc. respectfully

requests that this Court grant its motion and dismiss the Complaint with prejudice.

Dated: June 20, 2022

Respectfully submitted,

BENEFYTT TECHNOLOGIES, INC. f/k/a
HEALTH INSURANCE INNOVATIONS,
INC.,

By its attorney,

/s/ Allison M. O'Neil
Allison M. O'Neil BBO# 641330
Allison.ONeil@lockelord.com
111 Huntington Avenue, 9th Floor
Boston, MA 02199
T: 617-239-0729

126556082v.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2022, I caused a copy of the within Motion to Dismiss Plaintiff's Complaint to be served, via the court's electronic filing system, on Plaintiff at the following address:

Richard B. Reiling
Bottone Reiling
63 Atlantic Ave., 3rd Floor
Boston, MA 02110
richard@bottonereiling.com

David Pastor
Pastor Law Office
63 Atlantic Avenue, 3rd Floor
Boston, MA 02110
dpastor@pastorlawoffice.com

/s/ Allison  M. O'Neil
Allison  M. O'Neil

17

126556082v.2