## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT DOANE,　　　　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　　　） | |
| 　　　　　Plaintiff,　　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　　　） | Civil Action No. |
| 　　v.　　　　　　　　　　　　　　　） | 22-10510-FDS |
| 　　　　　　　　　　　　　　　　　　） | |
| BENEFYTT TECHNOLOGIES, INC., and ） | |
| GAVIN SOUTHWELL,　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　　　） | |
| 　　　　　Defendants.　　　　　　　　） | |
| 　　　　　　　　　　　　　　　　　　） | |

## MEMORANDUM AND ORDER ON
## <u>DEFENDANTS' MOTIONS TO DISMISS</u>

SAYLOR, C.J.

This is a dispute about allegedly unlawful telemarketing calls.  Plaintiff Robert Doane alleges that he received more than thirty calls on his cell phone between May and August 2018 from defendant's agents.  The calls used "spoofing," automatic telephone dialing systems ("ATDS"), and prerecorded messages to solicit sales of insurance-related products and services. After attempting to identify the source of the calls and providing his personal information to the agents, Doane received at least three additional direct calls.  Doane alleges that his cell phone number was listed on both the national and Massachusetts do-not-call registries at all relevant times.

Doane has sued Benefytt Technologies, Inc. and its president, director, and CEO, Gavin Southwell, for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*; TCPA privacy regulations; the Massachusetts Telemarketing Solicitation Act ("MTSA"), Mass. Gen. Laws ch. 159C *et seq.*; the Massachusetts Consumer Protection Act ("MCPA"),

Mass. Gen. Laws ch. 93A *et seq.*; invasion of privacy by intrusion upon seclusion, in violation of the Massachusetts Right to Privacy Act, Mass. Gen. Laws ch. 214, § 1B; and civil conspiracy.

The calls at issue were not made by Benefytt, but by representatives of other entities. Benefytt has moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (and, as to parts of Count 2, to dismiss for lack of standing).  The principal issues are whether certain claims are time-barred, and whether the complaint plausibly alleges the existence of an agency relationship between Benefytt and the callers. For the following reasons, that motion will be granted as to all counts.

Defendant Southwell has also moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff has moved for leave to take jurisdictional discovery.  Although both parties have agreed to defer consideration of those motions until the motion to dismiss of defendant Benefytt has been resolved, under the circumstances the Court sees no reason to delay the resolution of those motions.  Accordingly, and for the following reasons, the motion to dismiss of defendant Southwell will be granted and plaintiff's motion to take jurisdictional discovery will be denied.

I.      **Background**

     A.      **Factual Background**

The following facts are set forth as alleged in the complaint and attached exhibits.

        1.      **Parties**

Robert A. Doane is a resident of Massachusetts.  (Compl. ¶ 4).

Benefytt Technologies, Inc., formerly Health Insurance Innovations, Inc., is a corporation organized under Delaware law with a principal place of business located in Tampa, Florida.  (*Id.* ¶ 5).

Gavin Southwell is a resident of Florida and the President, Director, and CEO of Benefytt Technologies.  (*Id.* ¶ 6).  The complaint alleges that he "exclusively directed" and "controlled" Benefytt Technologies and "personally participated in and authorized the actionable conduct alleged" by plaintiff.  (*Id.*).[1]

## 2.   <u>Alleged Conduct</u>

Between May and August 2018, Doane received at least thirty calls on his cell phone without his prior express written consent.  (*Id.* ¶ 49).  Those calls used "spoofing,"[2] automatic telephone dialing systems ("ATDS"),[3] and prerecorded messages to solicit sales of insurance-related products and services.  (*Id.* ¶¶ 49; 84).  He received at least three additional direct calls without giving his consent.  (*Id.*).[4]  The complaint alleges that his cell phone number was listed on both the Federal Trade Commission ("FTC") and Massachusetts do-not-call registries at all relevant times.  (*Id.* ¶ 46-47; Ex. 1).

After receiving a series of spoofed number calls over a six-day period from May 31 to June 5, 2018, Doane allegedly attempted to identify the responsible party.  (Compl. ¶ 52).  On each attempt, the agent identified themselves as affiliated with the National Health Enrollment Center ("NHEC").  (*Id.*).  On June 5, 2018, he spoke with an agent named "Alex," who stated that he was a NHEC representative.  (*Id.* ¶ 53).  Alex informed him that the calls were in

---

[1] The complaint also names Beneyftt CFO Michael Devries, John and Jane Doe(s), and XYZ company(ies) as defendants who personally participated in or authorized the alleged conduct.  (*Id.* ¶¶ 7-11).  Plaintiff dismissed his claims against defendant Michael Devries on July 6, 2022.

[2] Spoofing describes the practice of "displac[ing] an actual caller ID with a false one."  (Compl. ¶ 34).

[3] Under the TCPA, an ATDS is defined as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).

[4] It is not clear what plaintiff means by "direct" calls, but he appears to refer to three telephone calls he received from the office of Trishia Perez after expressing interest in signing up for a health-insurance policy.  Two of those calls came from a telephone number that an agent from the office represented to be her direct telephone number, and the third came from Trishia Perez's office through an apparently spoofed number with a local area code.  (Compl. ¶¶ 65-75).

response to his request for health insurance.  (*Id.* ¶ 54).  Doane denies making such a request.

(*Id.*).

Apparently in response to the agent's request, Doane provided his name and age, and

informed the agent that he resided in both Massachusetts and Florida.  (*Id.* ¶ 55).  Alex then

transferred him to an individual who claimed to be a "licensed agent" located in Florida.

(Compl. ¶¶ 57-58).  That agent allegedly told him that she would provide him with a "full

guarantee issue policy" through Health Choice Plus and VitalaCare, underwritten by Chubb.

(*Id.* ¶¶ 58-59).  The agent then started to prepare an application.  (*Id.* ¶ 60).  Doane provided his

e-mail, his Massachusetts address, and—after the agent informed him of the enrollment fee and

policy payments and assured him that the transaction would not be processed until he signed the

policy application—his credit card information.  (*Id.* ¶¶ 61-64).  According to the complaint, the

agent asked Doane to open a link sent to his e-mail and to sign the online application.  (*Id.* ¶ 66).

He declined to sign while on the call, but said he would call her back at her direct telephone

number.  (*Id.* ¶ 66-67).

The application was e-mailed from echosign@echosign.com, with a reply address listed

as webmaster@hiiquote.com.  (*Id.* ¶ 69; Ex. 2).  The e-mail contained a link to an application

form, which listed the name "Health Insurance Innovations" (the name under which Benefytt

was operating at the time) in the header and footer, with an address in Tampa, Florida.  (Compl.

¶ 71; Ex. 3).

Doane did not sign the application.  (*Id.* ¶ 72).  Around 4:00 p.m. that same day, he

allegedly received two telephone calls from the agent's telephone number, which he did not

answer.  (Compl. ¶ 73).  Later, he received a telephone call with a local prefix, which he did

answer.  (*Id.* ¶ 74).  The agent on the line indicated that she was calling from the office of

"Trishia Perez," and inquired whether plaintiff had received and signed the application.  (*Id.* ¶ 75).  The agent then provided him with "Trishia's office number" so that he could call back. (*Id.* ¶ 77).

On June 6, 2018, Doane received an e-mail from support@hiiquote.com, copied to perezhealthadvisors@outlook.com, stating that he needed to sign the application before the policy could take effect.  (*Id.* ¶ 78; Ex. 4).  He allegedly continued to receive prerecorded calls from several different spoofed numbers.  (*Id.* ¶ 79).  On June 19, 2018, he answered a call from a spoofed number with a prerecorded message offering health insurance, and spoke with an agent named "Nick."  (*Id.*  ¶ 81).  After answering questions similar to those he was asked on the June 5 call, he was transferred to a "licensed agent" who indicated that he was with NHEC.  (*Id.* ¶¶ 81-82).  The complaint alleges that after the agent realized Doane "was attempting to identify the offenders," he called him a "faggot" and indicated that he was "wast[ing] peoples time" and should "go fuck [him]self."  (*Id.* ¶ 83).

On August 3, 2018, Doane sent a demand letter to defendants pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, the Massachusetts Telemarketing Solicitation Act, Mass. Gen. laws ch. 159C, and the Massachusetts Consumer Protection Act, Mass. Gen. Laws. ch. 93A.  (*Id.* ¶ 89-91; Compl. Ex. 5).  In the letter, he demanded that defendants "provide their do-not-call policy, the name of the agents operating on their behalf . . . and that the calls immediately stop."  (Compl. ¶ 90).  The letter demanded actual and statutory damages.  (*Id.* ¶ 91).  The complaint alleges that "defendants did not respond to the demand letter with a reasonable offer."  (*Id.* ¶ 92).

### B.   Procedural Background

This case was originally filed in Massachusetts state court.  On April 7, 2022, defendants

removed the case to federal court.

The complaint alleges six claims against all defendants: violations of the TCPA, 47 U.S.C. § 227(b)(1)(A) (Count 1); violations of TCPA privacy regulations, 47 C.F.R. §§ 64.1200(c)(2), (d), (d)(1), (d)(3), (d)(4) (Count 2); violations of the MTSA, Mass. Gen. Laws ch. 159C, § 3 (Count 3); invasion of privacy by intrusion upon seclusion in violation of the Massachusetts Right to Privacy Act, Mass. Gen. Laws ch. 214, § 1B (Count 4); violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (Count 5); and conspiracy (Count 6).  The complaint also alleges those claims against any unknown defendants whose identities and actions become known during discovery (Count 7).

The complaint alleges that the telephone calls and solicitation caused plaintiff harm in the form of invasion of privacy, interrupted sleep, aggravation, emotional distress, mental anguish, waste of time, diminished value of his cell phone service and hardware, and increased electricity costs.  (Compl. ¶ 102).  It requests $90,000 in statutory damages pursuant to the TCPA, $630,000 in statutory damages pursuant to the MTSA, $10,000 in compensation for invasion of privacy, punitive damages pursuant to Mass. Gen. L. ch. 93A, § 9(3), an injunction against further telemarketing calls, disgorgement of illegal profits, and costs.  (Compl. at 27-28).

Defendant Benefytt has moved to dismiss the claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted (and, as to parts of Count 2, to dismiss for lack of standing).

Defendant Gavin Southwell has moved to dismiss the claim under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Plaintiff has moved to conduct jurisdictional discovery to respond to the Rule 12(b)(2) motion.

Pursuant to an assented-to motion, Southwell's motion to dismiss and plaintiff's motion

to conduct jurisdictional discovery are being held in abeyance pending the resolution of

Benefytt's motion to dismiss.

## II.   <u>Standard of Review</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the complaint must state a

claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

For a claim to be plausible, the "[f]actual allegations must be enough to raise a right to relief

above the speculative level . . . ." *Id.* at 555 (internal citations omitted).  "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 556).  When determining whether a complaint satisfies that standard, a

court must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all

reasonable inferences. *See Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir.

2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  Dismissal is appropriate if the

complaint fails to set forth "factual allegations, either direct or inferential, respecting each

material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v.

Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano

de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III.   <u>Analysis</u>

### A.   <u>Massachusetts Telemarketing Solicitation Act, Civil Conspiracy, and Invasion of Privacy</u>

Defendant first contends that the MTSA, invasion of privacy, and civil conspiracy claims

are barred by the relevant statutes of limitations.  Plaintiff responds that the complaint was filed

within the limitations period, in part due to a tolling agreement between the parties.[5]

Under Mass. Gen. Laws ch. 159C, § 10, claims for violations of the MTSA must be brought no more than three years "after the person bringing the action knew or should have known of the occurrence of the alleged violation . . . ."

Under Mass. Gen. Laws ch. 260, § 2A, tort claims—including for invasion of privacy and conspiracy—"shall be commenced only within three years next after the cause of action accrues." *See McLaughlin v. Boston Ret. Bd.*, 146 F. Supp. 3d 283, 289 (D. Mass. 2015) (invasion of privacy); *Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 332 (D. Mass. 2013) (civil conspiracy).  A cause of action in tort accrues at the time the plaintiff is injured. *Chalifoux v. Chalifoux*, 701 Fed. Appx. 17, 21 (1st Cir. 2017) (citing *Joseph A. Fortin Const., Inc. v. Massachusetts Hous. Fin. Agency*, 392 Mass. 440, 442 (1984)).  A tort claimant need not be aware of every element of the claim for the limitations period to commence; rather, he must have knowledge or notice that he was harmed and of the cause of the harm.  *Bowen v. Eli Lilly & Co.*, 408 Mass. 204, 208 (1990).  The standard for accrual is objective—that is, the limitations period begins to run when "a reasonable person in the plaintiff's position would have been able to discern the harm or the cause of the harm."  *Riley v. Presnell*, 409 Mass. 239, 245 (1991).

In response to the COVID-19 pandemic, the Massachusetts Supreme Judicial Court tolled the running of all limitations periods in civil cases from March 17 to June 30, 2020.  *See* Supreme Judicial Court, Third Updated Order Regarding Court Operations Under the Exigent Circumstances Created by the COVID-19 (Coronavirus) Pandemic, No. OE-144 (June 24, 2020); *see also Shaw's Supermarkets, Inc. v. Melendez*, 488 Mass. 338, 345 (2021) (interpreting the

---

[5] Plaintiff raised that argument in its opposition brief; the complaint itself makes no mention of such an agreement.  The Court will nonetheless consider the tolling agreement, as the parties do not contest its authenticity. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (recognizing that "documents the authenticity of which are not disputed by the parties" may be considered on a motion to dismiss).

order to apply to all claims with limitations periods running for some time between the specified

dates).  Therefore, an additional 106 days should be added to the limitations period for any claim

that had not expired by March 17, 2020.

During discussions with counsel prior to filing this suit, defendant allegedly agreed to toll

the limitations period for a 30-day period beginning on December 17, 2021.  (Pl. Decl. ¶ 4; Ex.

A).  That agreement was apparently a continuation of an earlier 30-day extension, which

defendant states was entered into on November 17, 2021.  (Pl. Opp'n at 6 n.4; Def. Reply at 2).[6]

Plaintiff filed the complaint on January 14, 2022, within that 60-day period.  However,

that tolling agreement could not revive a claim if the limitations period had already expired.  *See*

*Forrest v. The Paul Revere Life Ins. Co.*, 662 F. Supp. 2d 183, 193 (D. Mass. 2009) (no

contractual tolling where the limitations period had already expired before the plaintiff was

notified of the possibility of entering into a tolling agreement).  Dismissal of the claims is

appropriate if defendant can point to sufficient facts in the complaint showing that plaintiff knew

of or reasonably could have discovered the existence of his injury and its source prior to August

3, 2018 (that is, 3 years and 106 days before the first tolling agreement).  *Sexual Minorities*

*Uganda*, 960 F. Supp. 2d at 333.

Plaintiff began receiving telemarketing calls in May 2018.  He spoke with an agent on

June 5, 2018, who claimed to be a representative of the "National Health Enrollment Center."

That same day, he received an e-mail with an application for health insurance that identified

"Health Insurance Innovations" (Benefytt's precursor) in the header, with a Florida address.  He

---

[6] Plaintiff has submitted a copy of a December 17, 2021 e-mail from Benefytt's attorney agreeing to extend
the tolling period to January 17, 2022, but the e-mail does not provide detail on the original tolling agreement.
Defendant states in its reply brief that the December 17, 2021 agreement extended an earlier 30-day tolling period
entered into on November 17, 2021, but does not provide evidentiary support for that claim.  Plaintiff in its
opposition simply says that the December 17 agreement "was an extension of a previously agreed tolling period"
without specifying the length of that earlier agreement.  (Pl. Opp'n at 6 n.4).

also spoke with an agent from the office of "Trishia Perez" about the insurance policy.  On June 19, 2018, he spoke with an agent who was apparently affiliated with NHEC.  Although the complaint alleges that the calls continued for "several weeks" after June 19, it does not allege that plaintiff obtained any additional information from those calls.  And while he did not send a demand letter to defendant until August 3, 2018, that letter recites the same facts as the complaint.  Therefore, plaintiff necessarily had knowledge of the harm caused and the source of the harm by June 19, 2018 (and without question at some point before August 3, 2018).  Accordingly, the claims had accrued by June 19, 2018.  Even allowing for tolling under the SJC's order, the limitations period expired on October 3, 2021, before the parties entered into a tolling agreement in November 2021.

Where the facts alleged in the complaint make clear that the claims are time-barred, dismissal is appropriate.  *Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 320 (1st Cir. 2008).  Here, it is clear from the face of the complaint that the plaintiffs' MTSA, invasion of privacy, and civil conspiracy claims were filed outside the relevant limitations periods, even taking into account the SJC's tolling order and the agreement between the parties.

Accordingly, the motion to dismiss Counts 3, 4, and 6 will be granted.

### B.    Telephone Consumer Protection Act

Defendant next seeks dismissal of the TCPA claims on the following grounds:  (1) that plaintiff lacks standing to sue based on violations of TCPA regulations governing internal do-not-call lists, and (2) that the complaint fails to allege either that defendant directly called plaintiff or that the third-party callers acted as defendant's agents.[7]

---

[7] Defendant also seeks to dismiss Count 2 with respect to the alleged violations of 47 C.F.R. § 64.1200(c)(2)—which prohibits telephone solicitations to persons on the national do-not-call registry—by Perez Health Advisors, on the ground that the complaint does not allege that Perez made more than one telephone solicitation to plaintiff, as required to bring a claim under 47 U.S.C. § 227(c)(5).  Because the Court concludes that

1.      **TCPA Standard**

Congress enacted the TCPA after determining that "[m]any consumers [were] outraged over the proliferation of intrusive, nuisance calls . . . from telemarketers."  Pub. L. No. 102-243, § 2(6), 105 Stat. 2394 (1991).

One way that the TCPA regulates telemarketing calls is by prohibiting the use of automated calling systems.  Section 227(b)(1)(A) makes it "unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1).[8]  *See also ACA Int'l. v. FCC*, 885 F.3d 687, 692-93 (D.C. Cir. 2018) (explaining statutory scheme).  The TCPA provides a private right of action for aggrieved plaintiffs to seek actual damages, or $500 in statutory damages per violation. *Id.* § 227(b)(3).

The TCPA also authorizes the Federal Communications Commission ("FCC") to create rules "to protect residential telephone subscribers' privacy rights."  *See id.* § 227(c)(1).  Pursuant to that authority, the FCC has promulgated regulations concerning both the national do-not-call registry and internal do-not-call lists maintained by telemarketers.  Under 47 C.F.R. § 64.1200(c)(2), it is unlawful to "initiate any telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call

---

the complaint fails to allege the existence of an agency relationship between Perez and defendant sufficient to establish vicarious liability for such a violation, the Court will not independently address the "more than one call" argument.

[8] Section 227(b)(1)(B) also makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party."  Only the provision dealing with calls to cell phones is at issue here.

registry . . . ."[9]  Under 47 C.F.R. § 64.1200(d), it is unlawful to "initiate any call for

telemarketing purposes" without "institut[ing] procedures for maintaining" an internal do-not-

call list.  Such procedures include (1) maintaining a written do-not-call policy that is available

upon request; (2) recording and honoring do-not-call requests; and (3) identifying the name of

the caller during each call as well as the name and contact information of the person or entity on

whose behalf the call was made.  47 C.F.R. §§ 64.1200(d)(1), (3), (4).  Section 227(c)(5)

provides a private right of action for "[a] person who has received more than one telephone call

within any 12-month period by or on behalf of the same entity in violation of" the TCPA privacy

regulations.  47 U.S.C. § 227(c)(5).

        The complaint alleges that defendant violated the TCPA and its implementing regulations

by (1) causing plaintiff's cell phone number to be called despite its inclusion on the national do-

not-call registry, in violation of 47 C.F.R. § 64.1200(c)(2); (2) calling his cell phone using an

ATDS and prerecorded messages without his prior written consent, in violation of 47 U.S.C.

§ 227(b)(1)(A)(iii); (3) failing to maintain a do-not-call registry, in violation of 47 C.F.R.

§ 64.1200(d); (4) failing to provide him with a do-not-call policy upon demand, in violation of

47 C.F.R. § 64.1200(d)(1); (5) failing to honor his do-not-call requests, in violation of 47 C.F.R.

§ 64.1200(d)(3); and (6) failing to provide him with defendant's contact information during the

calls, in violation of 47 C.F.R. § 64.1200(d)(4).  (Compl. ¶¶ 105-31).

## 2.    <u>Standing to Pursue Alleged Violation of § 64.1200(d)</u>

        The Court will first address defendant's argument that plaintiff lacks standing to pursue a

TCPA claim based on violations of 47 C.F.R. § 64.1200(d).  That regulation requires any entity

---

[9] "[T]he term 'residential telephone subscriber' can encompass wireless or cellular phone users, and therefore the TCPA's [do-not-call] protections can extend to such users."  *Mantha v. QuoteWizard.com, LLC*, 2022 WL 325722, at *4 (D. Mass. Feb. 3, 2022).

initiating telemarketing calls to maintain an internal do-not-call list.[10]

To satisfy the standing requirement, a plaintiff must prove that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. Defendant contends that the failure to maintain a do-not-call registry was a "bare procedural violation" insufficient to establish an injury-in-fact. *Id.* at 343.

The complaint alleges that defendant's "illegal solicitation activities have caused Plaintiff actual harm" in the form of invasion of privacy, interrupted sleep, aggravation, emotional distress, mental anguish, waste of time, diminished value of his cell phone service and hardware, and increased electricity costs. (Compl. ¶ 102). "The majority of courts considering similar facts have found them sufficient to satisfy the requirement of concrete injury, and several have held that a mere technical violation of the TCPA is, by itself, a concrete injury sufficient to confer standing." *Gibbs v. SolarCity Corp.*, 239 F. Supp. 3d 391, 395 (D. Mass. 2017) (collecting cases). *See also Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019) ("The receipt of more than one unwanted telemarketing call made in violation of the provisions enumerated in the TCPA is a concrete injury that meets the minimum requirements of Article III standing."); *Krakauer v. Dish Network L.L.C.*, 168 F. Supp. 3d 843, 845 (M.D.N.C. 2016), *aff'd*, 925 F.3d 643 (4th Cir. 2019) ("[E]ach call made to a class member on a do-not-call list formed a concrete injury by creating a material risk of an injury to privacy.").

Nevertheless, the complaint must also allege that plaintiff's injuries are traceable to the

---

[10] Violations of regulations promulgated under the TCPA give rise to liability under 47 U.S.C. § 227(c)(5).

violations of the TCPA regulations.  The complaint alleges that defendant violated §§ 64.1200(d), (d)(1) and (d)(3) by failing to maintain an internal do-not-call list (as distinct from the national do-not-call registry), failing to provide plaintiff with its do-not-call policy upon demand, and failing to honor his do-not-call requests.  Plaintiff apparently first asked for a copy of the do-not-call list, and requested to be placed on that list, when he sent his demand letter on August 3, 2018.  (Compl. ¶¶ 89-90).  The complaint does not allege that plaintiff received any calls from defendant after that date.  Therefore, the complaint does not allege that any of plaintiff's injuries resulted from defendant's alleged failure to maintain an internal do-not-call list.  *See Cordoba*, 942 F.3d at 1271 (concluding that class members who had never requested to join the caller's internal do-not-call registry could not satisfy the traceability requirement of Article III).

Accordingly, defendant's motion to dismiss Count 2 for lack of standing will be granted with respect to the alleged violations of 47 C.F.R. § 64.1200(d), (d)(1) and (d)(3).[11]

### 3.  <u>Vicarious Liability</u>

The Court will next address defendant's motion to dismiss Count 1 and the remaining claims under Count 2 for failure to establish either direct or vicarious liability under the TCPA.

As set forth above, the TCPA makes it unlawful to "make any call" using ATDS or artificial or prerecorded voice, or to "initiate" a telemarketing call or telephone solicitation under certain circumstances.  47 U.S.C. § 227(b)(1)(A); 47 C.F.R. §§ 64.1200(c)(2), (d).  Here, plaintiff does not claim that defendant itself made or initiated any of the calls he received.  (Pl. Opp'n at 9).  Therefore, defendant is not directly liable for any TCPA violations arising out of

---

[11] Count 2 also alleges that defendant violated 47 C.F.R. § 64.1200(d)(4) because the callers did not identify on whose behalf the calls were being made.  Defendant did not move to dismiss that part of Count 2 for lack of standing.  Furthermore, even if standing exists under Count 2 as to all sub-parts of § 64.1200(d), the Court would still dismiss the claim for failure to allege a plausible basis for vicarious liability.

those calls.

The question is whether defendant may be held vicariously liable for such violations. A party "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers." *In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (stating that "the Ninth Circuit deferred to [the FCC's ruling in *In re DISH Network*] and we have no cause to question it"). Thus, a party "may be liable for [TCPA] violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re DISH Network*, 28 FCC Rcd. at 6584.

A complaint alleging vicarious liability under the TCPA does "not require the usual level of particularity." *Rosenberg v. LoanDepot.com LLC*, 435 F. Supp. 3d 308, 325 (D. Mass. 2020). Nevertheless, to state a claim, the complaint must plausibly allege that the callers acted within the scope of actual or apparent authority from the defendant, or that the defendant ratified their actions. *See In re DISH Network*, 28 FCC Rcd. at 6584; *Rosenberg*, F. Supp. 3d at 325.

a.    **Actual Authority**

Actual authority is an agent's power to act based on the principal's manifestations to the agent. RESTATEMENT (THIRD) OF AGENCY § 2.01; *see also Ophthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 37 n.6 (1st Cir. 2011). Actual authority can be express or implied. *See* RESTATEMENT (THIRD) OF AGENCY § 2.01 cmt. b. Express authority "means actual authority that a principal has stated in very specific or detailed language." *Id.* Implied authority is actual authority based on an agent's reasonable interpretation of the principal's manifestations under the circumstances. *Id.*

15

"An essential element of agency is the principal's right to control the agent's actions." RESTATEMENT (THIRD) OF AGENCY § 1.01 cmt. f.  "The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."  *Id.  See also Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 139 (E.D.N.Y. 2015) (complaint failed to allege existence of agency relationship where it lacked "any allegations that [the defendant] had the power to give 'interim instructions' to [the caller], or any non-conclusory suggestion of 'direction' or 'control' by [the defendant] of [the caller]").  In the context of TCPA violations, the following factors may indicate a defendant's control over a third-party caller:

> how the caller identified itself (e.g., as defendant's employee), the substance of the call (e.g. a statement by the caller that he or she was marketing defendant's goods or services), or any other details from the telephone calls that would tend to demonstrate an agreement between the caller and defendant that the caller would act on the principal's behalf and subject to the principal's control.

*Smith v. Liberty Mutual Insurance Co.*, 2021 WL 1581017, at *5 (D. Mass. Apr. 22, 2021) (quoting *Aaronson v. CHW Grp., Inc.*, 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019)).

In a similar case, another judge of this court dismissed a TCPA claim against an insurance provider who had allegedly contracted with third-party aggregators to generate business using autodialing methods.  *Smith*, 2021 WL 1581017, at *7.  The complaint alleged that the defendant was "generally aware" of the aggregators' marketing techniques and had set criteria for the telemarketer to identify potential customers.  *Id.* at *1, *5.  After plaintiff provided her e-mail to a telemarketer, she received an e-mail from the defendant about obtaining an auto insurance quote; however, no caller ever identified itself as a representative of the defendant.  *Id.*  The court concluded that the complaint failed to allege that Liberty Mutual had control over the callers or had directed them to call plaintiff, or that there was any relationship

16

between Liberty Mutual and the caller. *Id.* at *5.

Here, the complaint alleges in general terms that defendant enlisted one or more telemarketing agents to cold-call potential customers and generate leads for insurance policies, that the telemarketers acted "with the knowledge and assent" of defendant, and that the telemarketers possessed "actual authority" to call plaintiff. (Compl. ¶ 93, 98-99). While the complaint alleges that defendant limited the type of business the telemarketers could solicit, decided which leads to accept from the telemarketers, and oversaw the telemarketers' day-to-day operations, those allegations are entirely conclusory. (*Id.* ¶ 96).[12]

The complaint does not allege facts to plausibly suggest that defendant exercised control over any of the callers. As in *Smith v. Liberty Mutual*, no caller identified himself or herself as a representative of defendant; in fact, the only basis for inferring that any relationship existed between defendant and the callers is that "Health Insurance Innovations" (Benefytt's precursor) was listed on the health-insurance application plaintiff received by e-mail from Perez Health Advisors. While that raises a plausible inference that defendant may have contracted with Perez Health to sell insurance, it is not sufficient to establish a connection between defendant and NHEC. And even considering the "direct" calls made by Perez Health to plaintiff after he requested an insurance policy, there are no facts alleged to suggest that defendant instructed the office of Trishia Perez to make those calls, nor that it gave "interim instructions" about the calls' content. *See Smith v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 5346430, at *3 (N.D. Ill. Sept. 23, 2013) (granting a motion to dismiss a TCPA claim for failure to adequately plead a connection between the defendant and defendant's "agent's agent"); *Melito v. American Eagle*

---

[12] Plaintiff bases those allegations "on information and belief, based on having seen multiple contracts between telemarketers and lead generators and the ultimate sellers who engage the telemarketers and lead generators to provide leads for the seller's products and services." (Pl. Opp'n at 11). The complaint does not allege any facts suggesting the existence or content of a contract between defendant and NHEC or Perez Health Advisors.

*Outfitters, Inc.*, 2015 WL 7736547, at *7 (S.D.N.Y. Nov. 30, 2015) ("[m]ere conclusory allegations" that defendant had the right to control a supposed agent were insufficient to state a claim of vicarious liability). *But see Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 743-44 (N.D. Ill. 2014) (complaint adequately alleged an agency relationship where a company authorized the caller to make calls and enter into contracts on its behalf, and where the company had the right to control the "manner and means" of the calls, including by developing a call script).

In summary, the allegations of the complaint are insufficient to establish the existence of an agency relationship under a theory of actual authority.

**b.  <u>Apparent Authority</u>**

"Apparent authority is the power held by an agent . . . to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." RESTATEMENT (THIRD) OF AGENCY § 2.03.  Apparent authority can "be created only by the principal's manifestations to a third party," and not by the agent's representations alone.  *Moreau v. James River-Otis, Inc.*, 767 F.2d 6, 10 (1st Cir. 1985).[13]

Here, the complaint generally alleges that the calls to plaintiff "were within the scope of the agent telemarketers' actual or, in the alternative, apparent authority."  (Compl. ¶ 100).  However, plaintiff apparently did not learn of defendant's identity until after he had received

---

[13] The FCC has indicated that the following evidence may support a finding that a telemarketer acts with the apparent authority of the seller:  access to information normally within the seller's exclusive control, such as pricing and customer data; the ability to enter customer information in the seller's internal systems; the authority to use the seller's trade name or marks; approval by the seller of a telemarketing script; and the seller's failure to force the telemarketer to cease conduct violating the TCPA.  *In re Dish Network, LLC*, 28 F.C.C. Rcd. 6574, 6592 (2013). "Numerous courts have concluded that the FCC's guidance . . . is not binding nor entitled to deference."  *Krakauer v. Dish Network LLC*, 311 F.R.D. 384, 395 (M.D.N.C. 2015) (collecting cases); *see also Dish Network, LLC v. FCC*, 552 F. App'x 1, 2 (D.C. Cir. 2014) (per curiam) ("The FCC agrees that the 'guidance' in question has no binding effect on courts [and] is not entitled to deference . . . .").

multiple calls from NHEC representatives and expressed interest in obtaining an insurance

policy.  (Compl. ¶¶ 66-68; Ex. 3).  Plaintiff cannot reasonably claim that he believed the callers

were acting on behalf of defendant before he knew that defendant even existed.

The only plausible evidence of any "outward manifestation" made by defendant is the

inclusion of "Health Insurance Innovations" on the e-mail sent by Perez Health Advisors.

However, the use of a defendant's trademark or name alone is "not sufficient to establish

apparent authority."  *McDermet v. DirecTV, LLC*, 2021 WL 217336, at *10 (D. Mass. Jan. 21,

2021).  At most, the inclusion of defendant's trade name on the e-mail raises an inference that

Perez Health was authorized to sell defendant's product.  It does not indicate that defendant

authorized any subsequent marketing calls by Perez Health or NHEC.  *See also Kristensen v.

Credit Payment Servs. Inc.*, 2015 WL 4477425, at *4 (D. Nev. July 20, 2015), *aff'd*, 879 F.3d

1010 (9th Cir. 2018) ("The fact that one party performs a service that facilitates the other's

business does not constitute such a manifestation.") (quoting Restatement (Third) Of Agency

§ 3.03 cmt. b (2006)).

Accordingly, the complaint does not plausibly allege that the callers had apparent

authority to act as defendant's agents.

### c.    Ratification

"Ratification is the affirmance of a prior act done by another, whereby the act is given

effect as if done by an agent acting with actual authority."  Restatement (Third) Of Agency

§ 4.01(1).  "Where an agent lacks actual authority to agree on behalf of his principal, the

principal may still be bound if the principal acquiesces in the agent's action, or fails promptly to

disavow the unauthorized conduct after disclosure of material facts."  *Licata v. GGNSC Malden

Dexter LLC*, 466 Mass. 793, 802 (2014) (quoting *Linkage Corp. v. Trustees of Bos. Univ.*, 425

Mass. 1, 18 (1997)).  *See also Rosenberg*, 435 F. Supp. 3d at 325 (citing *In re Dish Network,*

*LLC*, 28 F.C.C. Rcd. at 6587 n.104) ("A seller may be liable for unauthorized conduct of a

telemarketer if the seller is aware of the unauthorized conduct of the telemarketer and fails to

terminate its services.").  "Ratification must be based upon full knowledge of all material facts,

subject, however, to the qualification that there may be ratification when one purposely shuts his

eyes to means of information within his own possession and control, and ratifies an act

deliberately."  *Licata*, 466 Mass. at 802 (quoting *Kidder v. Greenman*, 283 Mass. 601, 615

(1933)).  *See also* RESTATEMENT (THIRD) OF AGENCY § 4.01 cmt. d ("[K]nowing acceptance of

the benefit of a transaction ratifies the act of entering into the transaction.").

 The complaint alleges that defendant "illegally profited from the agent telemarketers' []

efforts and ratified the actions of the agent telemarketers by knowingly accepting the benefits of

[their] illegal activities."  (Compl. ¶ 101).  Defendant first asserts that plaintiff cannot prevail on

a theory of ratification where he has failed to establish that a principal-agent relationship exists

between defendant and the callers.  "Ratification does not occur unless . . . the actor acted or

purported to act as an agent on the person's behalf."  RESTATEMENT (THIRD) OF AGENCY

§§ 4.01(3)(a), 4.03.  As noted, the complaint fails to allege that the callers acted with actual or

apparent authority, or that they purported to act on defendant's behalf.

 However, even assuming that plaintiff could prevail on a ratification theory without

demonstrating the existence of an independent agency relationship, the complaint still does not

state sufficient facts to infer that defendant had knowledge of the calls or of the allegedly illegal

marketing methods used by the callers.  There is no allegation that defendant was aware of

plaintiff's communication with NHEC or Perez Health Advisors—much less the unlawful

telephone calls—until plaintiff filed his demand letter.  *Compare Liberty Mutual*, 2021 WL

1581017, at *6 (complaint failed to allege ratification where it did not state that Liberty Mutual knew of calls made, even where Liberty Mutual was generally aware of telemarketing methods used by its third-party aggregators) *and McDermet*, 2021 WL 217336, at *11 (finding no evidence of ratification where defendants terminated contracts with offending authorized retailers upon learning of their illegal telemarketing) *with Rosenberg*, 435 F. Supp. 3d at 325 (finding that plaintiff stated a claim for ratification where defendant was aware of and disregarded plaintiff's complaints about the third party's marketing calls).[14]

In his memorandum in opposition (but not in his complaint), plaintiff states that "it is clear that Benefytt knew about [its telemarketers] illegal practices, based on, among other things, the various investigations, governmental and regulatory proceedings, and civil lawsuits against it, challenging its sales and telemarketing practices."  (Pl. Opp'n at 11).  However, the legal proceedings cited by plaintiff were proceedings initiated against *defendant*, not against NHEC or Perez Health.  Some of those proceedings dealt with unfair and deceptive marketing techniques employed by defendant that have nothing to do with the telemarketing techniques alleged here.[15]

---

[14] The complaint generally alleges that plaintiff made defendant aware that he did not want to receive telemarketing calls, but does not specify how or to whom he communicated that request.  (Compl. ¶ 158).  The only specific request that plaintiff identifies is the Demand Letter filed August 3, 2018.  (Compl. ¶ 90) ("The Demand Letter demanded . . . the Defendants immediately provide their do-not-call policy, the name of the agents operating on their behalf, if any, and that the calls immediately stop.").

[15] Those proceedings are (1) a consent order entered against Health Insurance Innovations, Inc. in *Commonwealth of Massachusetts v. Health Plan Intermediaries Holdings, LLC d/b/a Health Insurance Innovations*, No. 21-2337 (Sup. Ct. Oct. 20, 2021) (Pastor Decl., Ex. A), and (2) a cease-and-desist proceeding initiated by the Securities and Exchange Commission against Health Insurance Innovations, Inc. and Gavin Southwell, *In the Matter of Health Insurance Innovations Inc. now named Benefytt Technologies, Inc. and Gavin D. Southwell*, SEC Administrative Proceeding Release No. 11084 (July 20, 2022) (Pastor Decl., Ex. B).  The consent judgment involved an investigation into defendant's marketing and sales practices and ordered that it refrain from engaging in "unfair and deceptive acts," such as misrepresenting the scope of its policies, cost of coverage, and policy limitations.  It did not address the telemarketing strategies of NHEC or other third-party actors.  The cease-and-desist order found that Benefytt and Southwell made false and misleading statements to investors in violation of the Securities Act and the Securities Exchange Act, including by concealing consumer complaints about their insurance policies.  Those complaints included that "third-party insurance agents that contracted with [defendant] made misrepresentations to sell products, failed to cancel plans when consumers requested and charged consumers for products they did not authorize."  (Pastor Decl., Ex. B at 2).  However, the complaints do not appear to address the

And while a class action lawsuit filed against Benefytt for violations of the TCPA may show that defendant is on notice of its obligations under the statute generally, it does not show that defendant had knowledge of any illegal behavior by the telemarketers it may have engaged.[16] Finally, while plaintiff cites to an assortment of negative online reviews and consumer alerts mentioning NHEC, it does not state any reason why defendant should have been aware of those notices. (Pl. Opp'n at 12 n.13). In sum, even if those allegations had been included in the complaint, they are insufficient to show that defendant had "full knowledge" of its telemarketers' practices, or that it "turned a blind eye" to facts that ought to have led it to investigate further.

The complaint therefore fails to allege sufficient facts to show that defendant ratified the callers' actions. Accordingly, Counts 1 and 2 will be dismissed for failure to establish that defendant was vicariously liable for the calls placed to plaintiff.

### C.   Massachusetts General Laws Chapter 93A

Plaintiff's remaining claim, for violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, can be dismissed for failure to allege an underlying unfair practice.

Chapter 93A prohibits "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2(a). A Chapter 93A claim must allege a practice that (1) is within "the penumbra of some common-law, statutory, or other established concept of unfairness," (2) is "immoral, unethical, oppressive, or unscrupulous," and (3) "causes substantial injury to consumers," competitors, or other business entities. *Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 243 (1st Cir. 2005).

---

specific TCPA violations at issue here, namely, the use of autodialing and the failure to comply with TCPA do-not-call regulations.

[16] *Moser v. Health Insurance Innovations, Inc. et al.*, 2017 WL 11519126 (S.D. Cal.) (Pl. Opp'n at 12 n.12).

Plaintiff's contention that the violations of the TCPA[17] and MTSA are *per se* violations of Chapter 93A is unavailing, given the dismissal of those claims.  Nor can the claim for invasion of privacy form the basis of a Chapter 93A claim, as it is time-barred.  Finally, the complaint alleges that defendant's "large scale, unsolicited and harassing telemarketing calls"— which apparently gave defendant an "unfair competitive advantage over businesses that solicit business lawfully"—independently constituted unfair and deceptive conduct.  (Compl. ¶ 159).  Those allegations do not support liability under Chapter 93A, given the complaint's failure to plausibly allege the existence of an agency relationship between defendant and those engaged in the solicitation practices.  *See Jones v. Revenue Assistance Program*, 2016 WL 3919843, at *4 (D. Mass. July 14, 2016) (dismissing Chapter 93A claim given dismissal of TCPA, MTSA, and other statutory causes of action, and given the absence of some other theory of unfairness).

Accordingly, Count 5 will be dismissed.

### D.      Claims Against Unknown Defendants

Based on the dismissal of Counts 1 through 6, the Court will also dismiss Count 7 (alleging claims against unknown defendants).

### E.      Claims Against Gavin Southwell

Defendant Gavin Southwell has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) on the grounds that the Court lacks personal jurisdiction over him and that the complaint fails to allege that he personally participated in or authorized the alleged unlawful conduct.  Plaintiff has moved for leave to conduct jurisdictional discovery to respond to the jurisdictional motion.  Although the parties have agreed to defer consideration of those

---

[17] Independent of the allegations that defendant violated the civil provisions of the TCPA, plaintiff also contends that defendant violated the criminal provision of the TCPA, 47 U.S.C. § 227(e)(1), by causing a "caller identification service to knowingly transmit misleading or inaccurate caller identification information with the intent to defraud, cause harm, or wrongfully obtain things of value."  (Compl. ¶ 155).

motions pending the Court's ruling on the motion to dismiss the claims against Benefytt, the Court sees no reason for further delay in resolving those motions. Their disposition is obvious, particularly in light of the Court's ruling as to Benefytt, and it would simply increase inefficiency, expense, and delay to require the parties to brief those issues in full.

The substantive allegations in the complaint against Southwell are limited to the conclusory statement that as President, Director, and CEO, he "exclusively directed[] and controlled Benefytt Technologies, and personally participated in and authorized the actionable conduct." (Compl. ¶ 6). The complaint contains no facts suggesting that he personally directed, authorized, or even had knowledge of the calls made to plaintiff. It also alleges that he is a resident of Florida. (*Id.*). It contains no allegations that he personally undertook any actions in Massachusetts.

### 1. <u>Personal Jurisdiction</u>

The plaintiff bears the burden of showing that the court has personal jurisdiction over the defendant. *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, PA*, 290 F.3d 42, 50 (1st Cir. 2002). Where, as here, a district court considers a motion to dismiss for lack of personal jurisdiction without first holding an evidentiary hearing, the district court applies a *prima facie* standard to determine if plaintiff has met its burden. *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 712 (1st Cir. 1996). In conducting a *prima facie* analysis, the court is required to take specific facts affirmatively alleged by the plaintiff as true, construing them in the light most favorable to the plaintiff. *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (citing *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)). The court, however, should not credit "conclusory allegations or draw farfetched inferences." *Ticketmaster-New York v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994).

The exercise of personal jurisdiction over a defendant must be both authorized by statute

and consistent with the due process requirements of the United States Constitution.  *Nowak*, 94

F.3d at 712.  Under the Massachusetts long-arm statute, "[a] court may exercise personal

jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or

equity arising from the person's . . . transacting any business in this commonwealth[,

or] . . . causing tortious injury in this commonwealth by an act or omission outside this

commonwealth if he regularly does or solicits business . . . in this commonwealth."  Mass. Gen.

Laws ch. 223A, §§ 3(a), (d).

Here, the complaint contains no allegations that Southwell, who is based in Florida,

transacted business in Massachusetts.  Furthermore, given the failure to allege an agency

relationship between Benefytt and the callers, the complaint does not plausibly allege that

Southwell caused a tortious injury in Massachusetts.  Therefore, jurisdiction cannot be asserted

over Southwell under the long-arm statute.  *See Michaud v. Solomon*, 2021 WL 2190988, at *4

(D. Mass. May 29, 2021) (finding no personal jurisdiction under long-arm statute for TCPA

claim where defendants were based in Florida and where there was "no showing that they

participated or directed the calls to [plaintiff] or otherwise attempted to transact business [in

Massachusetts]").

Nor does personal jurisdiction exist under a constitutional analysis.  Due process requires

that a defendant over whom a court will exercise jurisdiction has maintained "minimum

contacts" with the forum state "such that the maintenance of the suit does not offend traditional

notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S.

310, 316 (1945) (quotation marks and citation omitted).  "A district court may exercise authority

over a defendant by virtue of either general or specific jurisdiction."  *United States v. Swiss Am.*

*Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001) (quotation marks and citation omitted).

"General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." *Id.* at 618 (quotation marks and citation omitted). General jurisdiction does not exist here because the complaint alleges that Southwell lives in Florida, and does not allege any facts suggesting that he had a "continuous and systematic" presence in Massachusetts. *See Centurion Networking Serv. Partners, LLC v. Dr. Wade N. Barker, PA*, 2018 WL 1972789, at *2 (D. Mass. Apr. 26, 2018) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . .").

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities." *Swiss Am. Bank, Ltd.*, 274 F.3d at 618 (quotation marks and citation omitted). A plaintiff seeking to establish specific jurisdiction must show that (1) the claim "directly arise[s] out of, or relate[s] to, the defendant's forum-state activities, (2) "the defendant's in-state contacts [] represent a purposeful availment of the . . . benefits and protections of that state's laws," and (3) the exercise of jurisdiction is reasonable. *Copia Commc'ns, LLC v. AMResorts, LP*, 812 F.3d 1, 4 (1st Cir. 2016) (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 27 (1st Cir. 2008)). Again, the complaint lacks any allegations that Southwell conducted any activity in the forum state, given the absence of alleged facts showing that he directed or authorized the calls placed to plaintiff in Massachusetts. *See Michaud*, 2021 WL 2190988, at *4 (no specific jurisdiction where plaintiff failed to show that telemarketing calls were placed by defendant's employee).

Nor is jurisdictional discovery appropriate. It is well-established that "a diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of *in personam* jurisdiction *may* well be entitled to a modicum of jurisdictional discovery if the

26

corporation interposes a jurisdictional defense." *Swiss Am. Bank, Ltd.*, 274 F.3d at 625 (quoting *Sunview Condominium Ass'n v. Flexel Int'l, Ltd.*, 116 F.3d 962, 964 (1st Cir.1997)).  In diligently making out a "colorable case" of personal jurisdiction, the plaintiff must "present facts to the court which show why jurisdiction would be found if discovery were permitted."  *Id.* at 626.

Here, plaintiff contends in conclusory terms that the requested discovery will show that Southwell "controlled the day-to-day operations of Benefytt,"  "personally participated in, directed and controlled the telemarketing efforts that led to harm alleged in the Complaint," and "purposely directed his tortious conduct at a Massachusetts resident and knew or should have known that his actions would cause injury in Massachusetts."  (Dkt. No. 23, Pl. Mem. at 9-10).  He alleges no specific facts of any kind in support of those contentions.  And, given the failure to allege an agency relationship connecting Benefytt to the callers, plaintiff has not established a "colorable case" that discovery will uncover evidence showing that he directed or controlled those calls.

Under the circumstances, the Court can ascertain no colorable basis for the exercise of personal jurisdiction over Southwell.  The motion to dismiss for lack of personal jurisdiction will therefore be granted.

### 2.    Failure to State a Claim

In any event, even assuming that jurisdiction exists, the claims against Southwell fail.

As noted, the complaint does not allege sufficient facts to sustain a claim against Benefytt.  It likewise fails to allege sufficient facts to support a theory of individual liability against Southwell under the TCPA or Chapter 93A.[18]  While the First Circuit has not yet defined

---

[18] As noted, claims for violation of the MTSA, invasion of privacy, and civil conspiracy claims are time-barred.

the scope of individual liability for cases under the TCPA, "[c]ourts that have addressed the issue have concluded that individuals acting on behalf of a corporation may be held personally liable for violations of Section 227 if they 'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *Jones v. Montachusett Reg'l Transit Auth.*, 2020 WL 1325813, at *4 n.3 (D. Mass. Feb. 7, 2020), *report and recommendation adopted sub nom. Jones v. Montachusetts Reg'l Transit Auth.*, 2020 WL 1333097 (D. Mass. Mar. 4, 2020) (quoting *City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 162 (3rd Cir. 2018)).[19]  Similarly, under Mass. Gen. Laws ch. 93A, "[c]orporate officers may be held liable under Chapter 93A for participating in unfair or deceptive practices of their corporations." *Trenwick Am. Reinsurance Corp. v. IRC, Inc.*, 764 F. Supp. 2d 274, 306 (D. Mass. 2011); *see also South Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc.*, 183 F. Supp. 3d 197, 221 (D. Mass. 2016) ("Imposing liability on individual corporate officers requires either knowledge of unlawful acts or actual participation in acts made unlawful by chapter 93A.").

In short, the complaint does not allege sufficient facts from which it could be plausibly inferred that Southwell could be found personally liable to plaintiff—particularly if Benefytt itself could not be found liable.

Accordingly, the motion of defendant Southwell to dismiss will be granted, both for lack of personal jurisdiction and failure to state a claim.  Because the proposed discovery is not likely to change the Court's determination that it lacks personal jurisdiction over the defendants, plaintiff's request for jurisdictional discovery will be denied.

---

[19] Section 227(b)(1)(A) prohibits "any person" from making any call using ATDS, autodialing, or prerecorded messages.  47 C.F.R. § 64.1200(c) states that "no person or entity shall initiate any telephone solicitation" to a number on the national do-not-call registry.  47 C.F.R. § 1200(d) states that "no person or entity shall initiate any call for telemarketing purposes" without maintaining an internal do-not-call list.

**IV.**   <u>**Conclusion**</u>

For the foregoing reasons,

1.   The motion of defendant Benefytt Technologies, Inc. under Fed. R. Civ. P. 12(b)(6) to dismiss all counts for failure to state a claim upon which relief can be granted and for lack of standing is GRANTED;

2.   The motion of defendant Gavin Southwell under Fed. R. Civ. P. 12(b)(2) and 12(b)(6) to dismiss all counts for lack of personal jurisdiction and for failure to state a claim is GRANTED; and

3.   Plaintiff's motion to conduct jurisdictional discovery is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: March 10, 2023                           Chief Judge, United States District Court